## McRAE v. CREEDON, Housing Expediter.
### No. 3458.

Circuit Court of Appeals, Tenth Circuit.
July 7, 1947.

Gretchen McRae, pro se.

Nathan Siegel, of Washington, D. C. (William E. Remy, Deputy Comm. for Enforcement, David London, Director Litigation Division, Albert M. Dreyer, Chief, Appellate Branch, Walter D. Murphy, Special Appellate Attorney, Max D. Melville, Regional Enforcement Executive, and Frank E. Hickey, Regional Litigation Atty., all of Washington, D. C., on the brief), for appellee.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellant, Gretchen McRae, is the owner of certain rental property in Colorado Springs, Colorado, which during the time material here, was subject to the applicable rent regulation for housing, issued by the Administrator, Office of Price Administration, under Section 2(b) of the Emergency Price Control Act of 1942, as amended, 58 Stat. 640, 50 U.S.C.A.Appendix, § 901 et seq. In November 1944, the Rent Director, acting in pursuance of Section 5(c) of the Rent Regulation, reduced the maximum rent on certain of appellant's property from that listed in her registration statement, and his order was affirmed on appeal to the Regional Administrator.

Thereafter, the Administrator filed suit in the District Court of Colorado, alleging violations of the modification order, praying for damages and the usual injunctive relief. When the case came on for trial the sole issue was whether the modification order authorized appellant to charge $1.00 per day for each tenant over two in addition to the maximum rent established by the modification order. The trial court held that it did and dismissed the suit. We reversed, Porter v. McRae, 10 Cir., 155 F.2d 213, holding that the rent order established the maximum rent which could be charged for the accommodations, regardless of the number of occupants; that the reasonableness of such order was not open to attack in the trial court, or on appeal, but was expressly committed by statute to the Emergency Court of Appeals.

Upon remand of the case, the Administrator moved for summary judgment alleging that, except as to the amount of damages, there was no material issue of fact. Appellant moved to dismiss on the grounds that the complaint failed to state a cause of action. The court granted the motion to dismiss as to injunctive relief. It also granted a summary judgment for double the amount of the overcharges as damages, in the sum of $132, but stayed the judgment for ten days pending the filing of a motion for a new trial. Within the ten days allowed, appellant, acting through another counsel, moved for a new trial alleging that the Administrator had issued to her a rent order covering other rented accommodations, based upon the number of occupants, thereby recognizing her interpretation of the rent order in question. An affidavit of appellant was attached in support of this allegation, and it was further alleged that the violations complained of were neither willful nor the result of failure to take practical precautions against the occurrence of such violations. Thereafter, and before disposition of the motion for new trial, appellant petitioned the court for leave to file a complaint in the Emergency Court of Appeals, as authorized by Section 204 (e) (1) of the Act. The motion for new trial and the petition for leave to proceed in the Emergency Court of Appeals were considered together and overruled. This appeal followed.

Two questions are presented: (1) Whether the issues were ripe for a summary judgment, and (2) whether the trial court erroneously denied appellant's application for leave to proceed in the Emergency Court of Appeals.

No issue of fact was originally tendered in the former appeal (Porter v. McRae, supra) and none by the pleadings on remand. Indeed, appellant moved to dismiss for failure to state a claim. The only issue surviving the appeal and presented to the trial court was the amount of damages to be assessed for the adjudicated violations. Summary judgment was therefore timely and appropriate. United States v. Hansen, 7 Cir., 143 F.2d 7; Batson v. Porter, 154 F.2d 566; Russell v. Barnes Foundation, D.C., 4 Cir., 50 F.Supp. 174, appeal dismissed, 3 Cir., 136 F.2d 654, 655. But appellant complains that she was denied the right to prove that the violations were neither willful nor the result of her failure to take practical precautions against the occurrences of the violations in mitigation of damages, as authorized by Section 205(e).

The trial court was authorized by Section 205(e) to render judgment for twice the amount of the overcharges, unless appellant proved the violations were neither willful nor the result of failure to take practical precautions against the occur-

rence of the violations, in which event the judgment should be the amount of the overcharges. The mitigating facts were an affirmative defense, which appellant had the burden of pleading and proving. Bowles v. Franceschini, 1 Cir., 145 F.2d 510; Bowles v. Glick Bros. Lumber Co., 9 Cir., 146 F.2d 566; Bowles v. Hasting, 5 Cir., 146 F.2d 94; Bowles v. Krodel, 7 Cir., 149 F.2d 398; Rainbow Dyeing & Cleaning Co. v. Bowles, 80 U.S.App.D.C. 137, 150 F.2d 273; Fontes v. Porter, 9 Cir., 156 F.2d 956; Bowles v. Batson, D.C., 61 F.Supp. 839, affirmed 4 Cir., 154 F.2d 566; Bowles v. Sago, D.C., 65 F.Supp. 178, 181; Bowles v. Vance, D.C., 64 F.Supp. 647.

■■■ Appellant did not plead the affirmative defense to the motion for summary judgment, but the rule for summary judgment clearly contemplates a full hearing on the amount of damages in the event of a judgment therefor. The amount of damages is always an open factual question. Indeed, the Administrator recognized as much in his motion for summary judgment. When the trial court came to enter judgment for the adjudicated overcharges, he stayed execution on the same to allow appellant to file a motion for new trial. The motion squarely and appropriately raised the affirmative defense, and it became the right and duty of the trial court to determine the issue upon the record before it. In the determination of the issue, it undoubtedly had a wide area of discretion, but there must be some evidence of willfulness or failure to take practical precautions in order to justify the imposition of the penalty.

■■■ We think it manifestly clear that the violations in this case are the result of a good faith misinterpretation of the applicable rent order. The modification order was silent concerning the number of occupants in the rented accommodations. Upon the trial of the suit for the overcharges, on the theory that the rent order did not authorize a charge of $1.00 per day for each occupant over two, the trial court agreed with appellant and dismissed the case. On appeal we took a different view, but the question was certainly not free from doubt. According to appellant's affidavit, attached to the motion for new trial, the Administrator had, by other rent orders, recognized her interpretation of the one in question. Ignorance of the law does not excuse, but it does mitigate. We are of the opinion that the overcharges, upon which the judgment is based, were the result of a mistaken belief that the applicable rent order authorized the charges exacted and collected. This being so, the violations could be neither willful nor the result of failure to take practical precautions against the occurrence of the violations. The judgment of the court is accordingly modified to the amount of the overcharges.

Section 203(a) of the Emergency Price Control Act, as amended by the Stabilization Extension Act of 1944, supra, authorizes any person subject to any provision of a regulation, order or price schedule to, at any time, file a protest with the Administrator, setting forth objections to such provisions. Provision is also made for the orderly hearing and disposition of the protest.

Section 204 of the Act, as amended, provides that any person aggrieved by the denial or partial denial of his protest may, within thirty days after such denial, file a complaint with the Emergency Court of Appeals, specifying his objections and praying that the regulation, order, or price schedule protested, be enjoined or set aside in whole or in part. The statute goes on to provide full and complete hearing before the court, and review of its judgment by writ of certiorari to the Supreme Court of the United States. Thus, the juridicial process contemplates exhaustion of the administrative remedy as prerequisite to judicial consideration.

When, in 1944, the Congress came to consider the extension of price controls, it recognized the manifest hardships resulting in cases where the applicable regulations, orders or price schedules dealt harshly and unjustly with the persons affected thereby, yet the courts were powerless to relieve against the inexorable incidence of the law, because jurisdiction to review the reasonableness of any such regulation, order or price schedule was committed exclusively to the Emergency Court of Appeals, and

993

the door to that court was closed because the aggrieved party had not exhausted his administrative remedy by timely protest under Section 203(a). See Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L. Ed. 1339; Yakus v. United States, 321 U. S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

To alleviate these recognized hardships the Congress, by the Stabilization Extension Act, supra, added subsection (e) (1) to Section 204 of the Emergency Price Control Act. This new subsection provides that "within five days after judgment in any civil * * * proceeding, brought pursuant to section 205 * * * involving alleged violation of any provision of any regulation or order issued under section 2, * * * the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated". It is further provided that the court in which the proceeding is pending "shall grant such leave with respect to any objection which it finds is made in good faith and with respect to which it finds there is reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with section 203(a) * * *."

The procedure thus provided is in addition to the usual and ordinary procedure provided for judicial review under Section 203(a) and 204, and according to its legislative history, was intended as an exceptional procedure, to be used in extraordinary circumstances in order to effectuate the purposes of the Act, without denial of fundamental justice. United States v. Steiner, 7 Cir., 152 F.2d 484; Dowling Bros. Distilling Co. v. United States, 6 Cir., 153 F.2d 353; Bowles v. Luster, 9 Cir., 153 F.2d 382, 383; United States v. Aronin, D. C., 57 F.Supp. 186; Senate Report 922, 78th Congress 2nd Session; House Conference Report No. 1698, 78th Congress 2nd Session; Congressional Record (Senate), 78th Congress, 2nd Session, June 21, 1944, p. 6451; Congressional Record (House), 78th Congress, 2nd Session, June 7, 1944, p. 5572.

Since appellant did not follow the regular procedure by filing her protest against the rent order with the Administrator in Washington under Section 203(a), she may not now invoke the jurisdiction of the Emergency Court of Appeals under Section 204 unless leave to proceed is granted under the extraordinary procedure provided in Section 204(e) (1). To bring herself within the saving provisions of this Section, she must have first applied to the court "within five days after judgment" in this case. Then, the court "shall grant such leave" if it finds the objection to the rent order is made in good faith, and that there is reasonable and substantial excuse for her failure to follow the regular protest procedure under Section 203(a).

The Administrator says that appellant did not apply for leave within five days after judgment, and for that reason alone her petition must fail.

The summary judgment was entered on July 17, 1945. Its execution was stayed to allow a motion for new trial, which was filed within the ten days allowed. On the day that the motion for new trial was overruled, the application to proceed in the Emergency Court of Appeals was filed. The motion and application were denied on the same day, and evidenced by the same journal entry of judgment.

The word "judgment," as used in Section 204(e) (1) means a final judgment —one from which an appeal lies, Fleming v. Gray, 9 Cir., 159 F.2d 641. The judgment was not final, hence appealable, until after the denial of the motion for new trial, and the application was made on the day the motion for new trial was denied. We cannot believe that an application to proceed in the Emergency Court of Appeals, filed on the date on which the court denied a motion for new trial after judgment, comes too late for consideration by the court to which it is addressed. It would be a strange doctrine indeed which would require a party to a suit to anticipate an adverse judgment in a pending proceeding and require him to take steps for relief elsewhere before the court's judgment became final. We conclude that the application was filed within five days after the

judgment, within the meaning of the statute.

 The court made no findings with respect to good faith or reasonable and substantial excuse, but its conclusion negatives any such findings. The court undoubtedly has a wide discretion in the determination of these issues—one which we should not disturb in the absence of clear abuse.

To show the good faith of her objection and reasonable and substantial excuse for failure to protest, appellant first points to the fact that she prepared a timely protest to the Administrator, but misdirected it to the Regional Office in Denver, instead of the Washington, D. C., office. From that point she argues that before she could redirect her protest to Washington she was sued in this case. That, thereafter, she assumed all of her rights could be adjudicated in the District Court, and proceedings elsewhere were neither necessary nor permissible.

Of course, the enforcement proceedings did not, in any way, prevent appellant from protesting the reasonableness of the rent order to the Administrator in Washington, and failing of relief there, pursuing her remedy in the Emergency Court of Appeals. But, throughout the course of this litigation the appellant has strenuously contended that the rent order, as construed and applied, was unreasonable and confiscatory.

We have then, simply a mistaken conception of the procedural devices available to her to fully test and adjudicate the reasonableness and validity of the rent order in one tribunal, while having it legally interpreted in another. The fact that she mistook her remedies, or did not avail herself of every procedural opening in the administrative phalanx, certainly does not mean that her objections were not in good faith, without any desire, or intention to delay, impede or avoid the ultimate consequences of applicable law. She now stands before the bar of this court entangled in a maze of procedural technicalities. While we appreciate and sympathize with the limited purpose of the amendment, we believe that the facts of this case present a typical example of the hardships which the Congress intended to alleviate by its enactment of subsection (e) (1).

The judgment is modified and reversed with directions to proceed according to the views herein expressed.