## FLEMING v. PHOENIX CHAIR CO.
### No. 9382.

Circuit Court of Appeals, Seventh Circuit.
May 7, 1948.

Rehearing Denied June 10, 1948.

M. K. Hobbs, of Chicago, Ill. and George Currie, of Sheboygan, Wis., for appellant.

Timothy T. Cronin, U. S. Atty., and Ellis J. Hughes, Asst. U. S. Atty., both of Milwaukee, Wis., for appellee.

Before MAJOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff, on March 5, 1945, filed suit in the District Court against the defendant, averring that the latter had violated provisions of Maximum Price Regulation 188 by failing to keep records and make reports required by Section 1499.11 of the General Maximum Price Regulation and that defendant had, in 1944, sold commodities for which a maximum price must be determined under Section 1499.156, 1499.157 and 1499.158 of Maximum Price Regulation 188, without complying with the reporting provisions of said sections, as required by Section 1499.152(c) of Maximum Price Regulation 188, at prices in excess of those permitted by Maximum Price Regulation 188, and in violation of Section 1499.152(a) thereof.

Plaintiff sought a mandatory injunction commanding defendant to prepare and keep for examination statements and records as required by the Regulation, to compute and report to the Administrator maximum prices for commodities sold by the defendant required to be priced under the Section aforesaid and to submit to the Office of Price Administration an application for specific authorization of the maximum prices required by 1499.158 of Maximum Price Regulation 188 for commodities sold for which the maximum prices could not be established under Sections 1499.155-6-7 of Maximum Price Regulation 188. Plaintiff prayed also an injunction against future sales in violation of the regulations and asked for treble damages.

Defendant answered denying that it had sold any article above ceiling prices or that it had failed to keep proper records or make proper reports.

The case proceeded to trial and, on the 24th day of September, 1946, the trial court filed a memorandum wherein it found that in 1944 defendant had sold to Emblem Manufacturing Company $46,463.01 worth of its regular line of merchandise and $40,992.26 worth of exclusive items of furniture all of which was drop-shipped to Emblem's retail customers; that in the base period, March, 1942, it had shipped similar merchandise to Emblem, drop-shipping the same to one Byrne, for delivery on Government contracts which Byrne had at that time with the armed forces; that the sales in March, 1942, to Emblem were sales to a class of purchaser other than and different from Emblem as it functioned in the sales made to it in 1944; that in March, 1942, defendant did not sell jobbers who sold to retail dealers but that in the year 1944 Emblem did resell its purchases to retailers, and that, though defendant did not refuse to sell directly to retailers during that period, some 13 former retail customers did in 1944 buy from Emblem at prices higher than they formerly paid when they bought directly from defendant; that defendant had accomplished indirectly what it could not do directly; that, accordingly, its prices for the commodities sold Emblem were to be fixed, as the Administrator had claimed, under Section 1499.158 of the Regulation which covers the fourth pricing method. That section provides that if the maximum price can not

be determined in accordance with the preceding prescribed methods for fixing maximum prices, it shall be fixed by an order specifically establishing the maximum price or ·a method for determining the same; that, prior to offering such article for sale, the manufacturer shall submit a report in duplicate applying for the establishment of prices for his articles and that, upon issuance of an order by the Price Administrator, the manufacturer may offer the article for sale only in accord with the terms of the order.

Thus the court, in its memorandum, agreed with the Administrator that defendant had procured the fixing of no maximum price for the articles sold Emblem. However, it did not at that time award a mandatory injunction requiring defendant to make application; it merely commented that judgment would go for plaintiff after the maximum prices had been determined in pursuance of the provision last above mentioned. There the case rested for some time.

During this interval, on October 23, 1946, defendant applied to the Office of Price Administration to fix its maximum prices for the goods shipped to Emblem in 1944. On the 10th day of December, 1946, the Office of Price Administration, in response to the application, issued Order No. L 5352 fixing defendant's prices for goods sold Emblem in 1944 at the regular retail rate, less 15%. The parties stipulated that, under this order, the excess prices on goods sold Emblem in 1944 were a total of $6,952.18. It was further stipulated that defendant did not waive any right on appeal "to raise a question of the application of Order L 5352 to its sales."

Some months later, on March 21, 1947, the Court entered its formal findings of fact and conclusions of law generally in accord with its earlier memorandum, but including the further finding that defendant had in the meantime applied to the Office of Price Administration for a maximum price for its goods sold Emblem to be fixed under the fourth pricing method of Maximum Price Regulation 188, governing the sales to Emblem in 1944. The court concluded that under the order plaintiff had ·made an overcharge of $6,952.18 and entered judg-

ment for that amount. From that judgment this appeal followed.

It is apparent therefore that, as the record now stands, the Office of Price Administration has, upon defendant's application, fixed its maximum prices for the goods sold Emblem in 1944 at 15% less than its retail prices. The Order has never been modified and no attack has been made upon its validity. Defendant has reserved the right to object to its applicability only.

In this situation it is well to keep ·in mind the scheme of operation and the method of judicial review provided by the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 901 et seq. Section 204(d) of that Act constitutionally grants exclusive original jurisdiction of all questions of validity of Regulations or Orders issued by the Office of Price Administration to the Emergency Court of Appeals and, upon review, to the Supreme Court. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834. Thus, the power of the Administrator to promulgate an Order or the validity of its terms may be considered and determined originally only by the Emergency Court of Appeals. In the absence of such a challenge before that tribunal, the Order must, in all other courts, be regarded as having all the attributes of Constitutional legislative enactment. Anchor Liquor Company v. United States, 10 Cir., 158 F.2d 221; Fleming v. Dashiel, 9 Cir., 161 F.2d 612. And this exclusive jurisdiction to determine validity of any Regulation or Order is not limited to regulations or orders of general application but includes also an Order directed to an individual seller. Woods v. Stone, 333 U.S. 472, 68 S.Ct. 624; Porter v. Eastern Sugar Associates, 4 Cir., 159 F.2d 299.

It is clear therefore that the power of the Administrator to issue the order fixing the maximum prices of the commodities sold Emblem in 1944 could not be questioned in the District Court, but could be attacked only through the channels of a protest to the Administrator, followed by a complaint in the Emergency Court of Appeals. And, just as clearly, the validity of the order can be questioned only in the

same manner. Thus, if defendant were dissatisfied with the order fixing the maximum prices for its sale of commodities to Emblem it could have applied for reconsideration and if that were denied, filed a protest and if that, in turn, were denied, it could have filed a complaint in the Emergency Court of Appeals that the order of the Administrator was invalid for any of the reasons provided by the statute. As the Supreme Court said, in Yakus v. United States, supra [321 U.S. 414, 64 S.Ct. 673],

"The Emergency Court has power to review all questions of law, including the question whether the Administrator's determination is supported by evidence, and any question of the denial of due process or any procedural error appropriately raised in the course of the proceedings. No reason is advanced why petitioners could not, throughout the statutory proceeding, raise and preserve any due process objection to the statute, the regulations, or the procedure, and secure its full judicial review by the Emergency Court of Appeals and this Court. Compare White v. Johnson, 282 U.S. 367, 374, 51 S.Ct. 115, 118, 75 L.Ed. 388."

This exclusive remedy defendant has failed to pursue. So, for all purposes of this litigation, the order remains in full force and effect. Consequently, we are without jurisdiction to adjudicate the question raised by defendant to the effect that sales made to Emblem in 1944 were sales to the same class of purchasers that Emblem and other purchasers were in the base period.

■ But defendant contends that it attacks only the applicability of this order to itself. Unfortunately, however, its attack upon applicability must be of short life, for, inasmuch as the order was explicit in its terms and specifically directed to defendant, there is no room for contention that it was not applicable. As we have seen, the validity of an order directed to a specific individual is subject to question only in the provided statutory method. On the other hand, applicability can not be questioned when the order is directed specifically to the defendant. As in Fleming v. Dashiel, 9 Cir., 161 F.2d 612, since the order was directed to defendant by name and address there can be no doubt that it applied to it and to it alone and, as in that case, any holding by the District Court that the order was not applicable to the defendant would have ignored the plain terms of the unimpeached order and would have been erroneous. And as said by the Supreme Court in Woods v. Stone, 333 U.S. 472, 68 S.Ct. 624, 625,

"No question is raised, and none could have been raised in this proceeding, as to the validity of the relevant regulations and the refund order, either on the ground of retroactivity or otherwise, because any challenge to the validity of either would have to go to the Emergency Court of Appeals. 50 U.S.C.App. Supp. V, § 924, 50 U.S.C.A.Appendix, § 924; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. See also Woods v. Cloyd W. Miller Company, 333 U.S. 138, 68 S.Ct. 421."

In other words, so long as the order complained of, as issued by the Administrator, remained unimpeached in validity and clearly applicable to defendant, it was controlling upon the trial court at the time final judgment was entered.

■ But, says defendant, the order was entered subsequent to the filing of the suit and upon its application, in order to afford the court proper measure of damages. But the Court had not directed the application to be made. And, even had it done so, defendant, having invoked procedure by the Administrator, is bound to abide by the order procured upon its invocation unless it is set aside by action through the prescribed statutory channels. Whether the Administrator improperly classified defendant so far as the sales to Emblem were concerned, whether he improperly made the prices retroactive, are all questions beyond the scope of inquiry of the enforcement court and of this Court upon review.

To our mind, under the particular circumstances of this case, it is immaterial when the order of the Administrator was entered. Thus, in Sobel Corrugated & Wooden Box Co. v. Fleming, 6 Cir., 165 F.2d 568, the original complaint had been filed by the Price Administrator on February 28, 1945. The order fixing prices

of which complaint was made was issued, during the pendency of the enforcement action, upon the filing of price formulas by the defendant. Yet the Court gave it full effect. So, here, we are convinced that we must give full effect to the order fixing defendant's maximum prices. If defendant is to have any relief from the order, it must proceed in the forum and according to the procedure prescribed by the Congress.

■ It is said that, aside from all other questions, the amount of goods sold Emblem in 1944 was such a small portion of defendant's total sales during that period that plaintiff was not justified in instituting and prosecuting the action. But the responsibility of determining whether a violation is of sufficient consequence to warrant action in the public interest rests with the Administrator. His decision in this respect involves questions of administrative policy wholly beyond the scope of judicial inquiry. Bowles v. Jones, 10 Cir., 151 F.2d 232.

The judgment is affirmed.