RECONSTRUCTION FINANCE CORP. v. SERVICE PIPE LINE CO. et al.

No. 4277.

United States Court of Appeals
Tenth Circuit.

Feb. 29, 1952.

On Rehearing Aug. 25, 1952.

David A. Richardson, Oklahoma City, Okl. (George E. McConley and Arthur J. Harvith, Washington, D. C., on the brief), for appellant.

Ray S. Fellows and T. W. Arrington, Tulsa, Okl. (Cecil L. Hunt and Charles R. Fellows, Tulsa, Okl., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

The Reconstruction Finance Corporation, as successor to the Defense Supplies Corporation, brought this action against the Stanolind Pipe Line Company, to recover $134,252.00 paid by the Defense Supplies Corporation to Stanolind (now Service Pipe Line Company) as subsidy on oil purchased by Stanolind from the Continental Oil Company, in the Montague Oil Field of Texas, from August 1944 to November 1946.

Within the framework of the pleadings, it is agreed that on June 28, 1944, the director of the Office of Economic Stabilization issued a valid directive to the Director of the Office of Price Administration, directing the Price Administrator to increase the existing price of crude oil produced from marginal oil fields. To avoid the impact of such increases on the war-time price structure, the Secretary of Commerce was directed to cause one of the corporations organized under Section 5d of the Reconstruction Finance Corporation Act, as amended June 25, 1940, 54 Stat. 573, to exercise its authority under Section 2(e) of the Emergency Price Control Act of 1942, 56 Stat. 26, 50 U.S.C.A.Appendix, § 902, to pay the producers or reimburse the purchasers of such oil, in the form of subsidies, the amount paid in excess of the established maximum price prior to the authorized increases.

Pursuant to the directive, and on July 10, 1944, the O. P. A. issued an amended RMPR 436, increasing the price of crude oil in stripper fields, and effective August 1, 1944, adopted another amendment to RMPR 436, listing the stripper fields and the amount of the increase in each, including the pools in Montague County, Texas, from which the oil in question was purchased by Stanolind. RMPR 436, as thus revised and amended, made such prices applicable to all sales and deliveries of crude petroleum, either by producers, sellers, refiners, or any other person, except crude petroleum sold to a customer for a

purpose other than the production of more than one petroleum fraction thereof. In other words, the prescribed prices were applicable only to crude oil produced and sold for refinery purposes. The prices on all other petroleum products were regulated by MPR 88.

Also pursuant to the directive of the Office of Economic Stabilization, the Secretary of Commerce designated the Defense Supplies Corporation as the corporation to administer the payment of the subsidies, and the Defense Supplies Corporation thereupon issued its Regulation No. 7, effective August 1, 1944, providing the details and the conditions under which the subsidy would be paid.

While these regulations, as revised and amended, were in effect, and during the period involved here, Stanolind transported through its extensive pipe line network to refineries or connecting carriers, a total of 242,645,976 barrels of crude oil, 15,340,485 barrels of which was oil from stripper fields on which a subsidy was payable. All of such oil was propelled through the pipe line by pumps at pumping stations owned and operated by Stanolind at points along its lines. In the operation of such pumps, Stanolind used crude petroleum for fuel, taking the same from the stream of petroleum passing through its pipe lines. Included in the oil purchased and transported by Stanolind during this period were 435,937 barrels from leases operated by the Continental Oil Company in Montague County, Texas, for which it paid Continental the subsidy price prescribed by Amendment 4 to RMPR 436, or a total sum of $139,489.00. This particular oil was purchased to replace the crude petroleum taken from the lines and used for fuel to operate the pipe line pumps, or lost by temperature changes, leakage or evaporation. Such oil was run into Stanolind's pipe line and commingled with other petroleum being transported by it to refineries.

Stanolind filed monthly claims on prescribed forms under oath to the Defense Supplies Corporation, and later to the R. F. C. as its successor, for reimbursement of the subsidies, and was paid the total sum of $134,252.00. After an examination of Stanolind's books, the R. F. C. reached the conclusion that the subsidies in question, having been paid on oil purchased to replace oil taken from Stanolind's pipe line and used as fuel and for other purposes, it bore no subsidy under RMPR 436. The R. F. C. thereupon refused to pay the last submitted claim in the sum of $5,237.00 and demanded that Stanolind repay the sum of $134,252.00 previously paid as subsidies. When Stanolind refused to refund this amount, the R. F. C. brought this suit in the United States District Court for the Western District of Oklahoma, alleging substantially the foregoing facts. Stanolind answered denying that the oil in question was used for fuel, or that it bore no subsidy, and cross-claimed for the $5,237.00.

Noting that the oil used for the operation of the pumps was incidental to the transportation of the oil by pipe line, and in accordance with the established custom in the industry, the court was of the opinion that oil used for this purpose was not fuel oil within the meaning of RMPR 436. And, it also concluded that the R. F. C. had failed to sustain the burden of proving that the oil in question was in fact used for fuel.

On appeal, the R. F. C. challenges the jurisdiction of the court to render any judgment except for the amounts paid by the R. F. C. as subsidy, the refund of which is demanded. It is said in that connection that the determination by the R. F. C. that Stanolind was not entitled to a subsidy on the oil in question, and the demand for the repayment of the subsidy, was an order under Section 2(e) of the Emergency Price Control Act of 1942, the validity of which could be challenged only in the Emergency Court of Appeals; that the District Court was therefore without jurisdiction to consider the validity of the R. F. C.'s determination and demand for refund.

It is of course too well settled to admit of discussion that the Emergency Court of Appeals, and the Supreme Court on review, are vested with sole and exclusive jurisdiction to review the validity of

orders, regulations and price schedules established or entered by the proper administrative body under Section 2 of the Emergency Price Control Act. Lockerty v. Phillips, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339; Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. And, the jurisdictional limitations thus imposed may be noticed at any stage of the proceedings by either party or the court. If, therefore, the demand for refund of the subsidy by the R. F. C. can be said to be an order under Section 2(e) of the Emergency Price Control Act, its validity, force and effect were not open to attack in the trial court.

In defense of the trial court's judgment, appellee denies that this is a suit attacking or testing the validity of an order of the R. F. C., but says it is an action by the R. F. C. in its capacity to sue and be sued for a money judgment, with a compulsory counterclaim necessarily presented by Stanolind under Rule 13(a), F. R. C. P., 28 U.S. C.A. In short, it says that no order is invoked or involved as a basis for the suit.

■ Authority for the payment of the subsidies in question is found in Section 2(e) of the Emergency Price Control Act, Title 50 App. 902(e), and an order relative to the payment or nonpayment of that subsidy would therefore be an order issued under Section 2(e), of which the Emergency Court of Appeals would have exclusive jurisdiction. See Duncan Coffee Co. v. R. F. C., Em.App., 178 F.2d 926; Tambasco v. R. F. C., 2 Cir., 178 F.2d 283; Armour & Co. v. R. F. C., Em.App., 162 F.2d 918; Merchants Packing Co. v. R. F. C., Em.App., 176 F.2d 908. The subsidy in question was paid in pursuance of Regulation 7 of the Defense Supplies Corporation, under authority of Section 2(e), on a form prescribed by it. In the claim, Stanolind agreed to furnish, promptly upon request, such information, data or documents in substantiation of amounts claimed as might be required; and Regulation 7 specifically provided that the Defense Supplies Corporation might, at any time, cause to be made, an examination or audit of any books, records or other supporting data

deemed necessary to verify further the validity and correctness of any claim filed under the Regulation. If any claim heretofore paid was found incorrect upon examination or audit, the amount of such payment became due and payable to the Defense Supplies Corporation, and "shall be returned to it upon demand."

The R. F. C. sought a judgment in the District Court for the amount of the subsidy paid, alleging in effect that Stanolind wrongfully and unlawfully received subsidies in the amount of $134,252.00. While no formal order or determination was directly or specifically pleaded, the complaint did allege that by letter dated October 18, 1946, the R. F. C. advised Stanolind that its claim in the amount of $5,237.00, filed subsequent to July 1946, was disallowed, and requested Stanolind to refund all sums previously claimed and paid to it. The parties stipulated for the trial that from an examination and audit of the books, "plaintiff reached the conclusion, the correctness of which is denied by defendant, that the oil which was the basis of said claims had been purchased and used as fuel, or to replace oil taken from defendant's pipe line and burned as fuel, and for other purposes which carried no subsidy * * * and demanded that defendant repay to plaintiff the said sum of $134,252.00."

■ This determination and consequent demand by the R. F. C. was the basis for the suit. The determination was made in pursuance and under authority of Regulation 7 of the Defense Supplies Corporation, which was promulgated and issued under authority of Section 2(e). Orders issued under authority of a regulation promulgated under Section 2(e) are themselves orders under Section 2(e), the validity of which is reviewable only in the Emergency Court of Appeals. Armour & Co. v. R. F. C., supra, 162 F.2d at page 923; Tambasco v. R. F. C., supra; Swift & Co. v. R. F. C., 7 Cir., 183 F.2d 456, 460; Wm. Schluderberg-T. J. Kurdle Co. v. R. F. C., Em.App., 169 F.2d 419.

It is argued that the determination and demand for refund cannot be an order under Section 2(e) because, being directed to a single person, it was not one of "general

applicability and effect" as defined in Section 2(e). But, "The command to refund cannot be treated as a thing apart, but must be taken in its setting as an integral and necessary part * * *" of the regulation under which the subsidy was paid. Woods v. Stone, 333 U.S. 472, 477, 68 S.Ct. 624, 627, 92 L.Ed. 815. See also Woods v. Kaye, 9 Cir., 175 F.2d 886, 889; Porter v. Eastern Sugar Associates, 4 Cir., 159 F.2d 299; Coffey v. Smith, 7 Cir., 150 F.2d 277; Fleming v. Phoenix Chair Co., 7 Cir., 168 F.2d 3; Fleming v. Dashiel, 9 Cir., 161 F.2d 612. Finally, to paraphrase Judge Thomas in R. F. C. v. MacArthur Mining Co., 8 Cir., 184 F.2d 913, 917, the question here is not whether the R. F. C. may sue and be sued in any court of competent jurisdiction upon claims growing out of either contract or tort. The question is whether the district court had jurisdiction of the cause of action alleged in the complaint, wherein the validity, force and effect of an order issued pursuant to the provisions of Section 2(e) of the Emergency Price Control Act is assailed.

We conclude that the determination of the R. F. C. that the subsidy had been incorrectly paid under Regulation 7, and a demand for the refund therefor, was an order under Section 2(e) of the Emergency Price Control Act, the force and effect of which was not open to question in the trial court.

The case is reversed and remanded without prejudice, however, to whatever right Stanolind or its successor may have under Section 204(e) of the Emergency Price Control Act of 1942, as amended July 30, 1947, 61 Stat. 619, 50 U.S.C.A.Appendix, § 924(e), for leave to file in the Emergency Court of Appeals a complaint against the R. F. C., setting forth objections to the validity, force and effect of the order on which this cause of action is based. See Utah Junk Co. v. Porter, 328 U.S. 39, 66 S.Ct. 889, 90 L.Ed. 1071; Woods v. Hills, 334 U.S. 210, 68 S.Ct. 992, 92 L.Ed. 1322. Cf. McRae v. Creedon, 10 Cir., 162 F.2d 989.

PICKETT, Circuit Judge, dissenting.

It is my view that the R. F. C. brought this action at law for money had and received under its general power to sue and be sued. As a basis for its complaint the R. F. C. alleged that the defendant had been paid by the Defense Supplies Corporation $134,252.00 as subsidy on oil which had been used as fuel oil by the defendant in the operation of its pipe line system and for which a subsidy was not allowable. Issue was joined on these allegations. That issue and no other was presented to the trial court and judgment was entered accordingly.

Prior to the commencement of the action, the only information which the defendant had concerning the claim of the R. F. C. was a letter from it dated October 18, 1946, disallowing a claim for a subsidy payment due on purchased crude oil and requesting the defendant to refund all sums previously claimed and paid to it for the purchase of like oil. So far as the record is concerned, the letter did not refer to any specific action of the R. F. C. relating to the refund. It did not refer to any specific subsidy payments and did not state the amount which it requested to be refunded. Not until the case arrived in this court did the R. F. C. or anyone else consider the letter as an order which would become final, in effect a judgment, because an administrative remedy therefrom had not been pursued and proceedings to review the same had not been instituted in the Emergency Court of Appeals within the statutory time. The letter which is now said to constitute a final order depriving the District Court of jurisdiction to consider the facts alleged in the complaint, was not pleaded as a final order and was not even introduced in evidence. The only reference to it in the entire record is in one paragraph of the complaint as above mentioned. It is not referred to in the stipulated facts. The jurisdictional question now raised is clearly an ingenious afterthought attempting to rescue a lawsuit which was lost on its merits. If the letter requesting the refund should be considered a final order upon which an action could be maintained, it would not be unlike a suit on a foreign judgment and the same rules of pleading and proof would apply. No attempt was made to comply with these

rules. 31 Am.Jur., Judgments, Sec. 853, et seq.

The request of the R. F. C. that this court reverse the judgment of the trial court and remand the case with instructions to enter a judgment for it in the amount prayed for, upon the grounds that the District Court was without jurisdiction to determine the issues presented to it, and that the demand of the R. F. C. is final, is a complete departure from the pleadings and the evidence and the theory upon which the case was tried and decided. Only in exceptional cases should an appellate court consider questions which have not been presented to and passed upon by the trial court. It should adhere to the factual theory upon which the case was tried in the District Court. Pennsylvania Railroad Co. v. Public Utilities Commission, 298 U.S. 170, 56 S.Ct. 687, 80 L.Ed. 1130; Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Virtue v. Creamery Package Mfg. Co., 227 U.S. 8, 33 S.Ct. 202, 57 L.Ed. 393; C. E. Warner, Trustee, v. Jerome Dworsky, 8 Cir., 194 F.2d 277; Lyons v. United States, 6 Cir., 123 F.2d 507; Valley Shoe Corp. v. Stout, 8 Cir., 98 F.2d 514; United States to Use of Merchants and Manufacturers Securities Co. v. Johnson, 8 Cir., 98 F.2d 462; Parrott Estate Company v. McLaughlin, 9 Cir., 89 F.2d 188.

The R. F. C. is in the anomalous position of asking us to declare that the District Court had no jurisdiction to consider the issue which it presented to that court, and at the same time requesting that we direct the entry of a judgment in its favor upon facts and upon a theory other than those which it submitted to the trial court and of which it offered no proof. The result in sustaining this position will permit the entry of a judgment against the defendant without any proof that the action of the R. F. C. was an order within the meaning of the statute and without giving the defendant an opportunity to defend upon that issue. Assuming that the jurisdictional claim of the R. F. C. is correct, it should not recover in this case because it has wholly failed to allege and prove the necessary facts upon which a judgment could be sustained except on the merits of its claim.

Under the statute as interpreted by the authorities, the Emergency Court of Appeals has exclusive jurisdiction "to determine the validity of any regulation or order issued under Section 2" of the Act, and no other court has "jurisdiction or power to consider the validity of such regulation, order or price schedule." The statutory definition of the regulations and orders referred to are those which are of general application and effect. Sec. 2(a), 56 Stat. 24. Thus it is clear to me that if the validity of a regulation or order of general application is at issue, exclusive jurisdiction is in the Emergency Court of Appeals. It is equally clear to me that every act or decision or conclusion of the R. F. C. which may relate to the administration of the Act is not a final order the correctness of which may be determined only by the Emergency Court of Appeals.

If a subsidy has been wrongfully claimed and collected the R. F. C. should and does have authority to sue and recover the same. Of necessity to determine that there has been an unlawful subsidy payment and to ascertain the amount thereof, an investigation must be made and a conclusion reached on the part of the R. F. C. It would follow as a matter of course that the R. F. C. would then notify the person against whom the claim is to be made and demand a refund, usually by letter. This is exactly what was done in the case before us and no more. Now it is said that the demand for refund is such an order that it becomes final and binding unless set aside on a protest hearing or by the Emergency Court of Appeals. The net effect of this is that every citizen who has had dealings with the United States, under the provisions of this Act, against whom a claim for refund is made, regardless of where he lives or the amount involved, will find himself in the Emergency Court of Appeals if he disagrees with the R. F. C. and refuses to comply with the demand. If the Emergency Court of Appeals upholds the action as an order, then the R. F. C. will be required to bring another action in the fed-

eral court of the district where the defendant lives, in the nature of an action on a final judgment, before it may proceed by execution. This creates the strange situation in our system of jurisprudence which I am certain was never intended, and I do not believe that the cited cases so hold. Not one of these cases was brought by the R. F. C. to recover on a claim growing out of the wrongful collection of government funds under the Act.

Here the issue presented to the trial court did not involve the construction, interpretation or validity of any order or regulation promulgated under the Act. It was not contended that crude oil purchased for fuel oil was entitled to a subsidy. The question presented to and determined by the court was whether, under the facts, the purchased oil was fuel oil which would exclude it from the provisions of the subsidy regulations.

Although I do not agree that the record here shows that there was any action on the part of the R. F. C. which would constitute an order within the meaning of the Emergency Price Control Act, I do agree that if the action of the R. F. C. is to be so considered then the defendant should not be deprived of its right to object to the validity of the order in the Emergency Court of Appeals under Sec. 204(e), as amended. I have no doubt that the condition of the pleadings and the record in this case are such that the defendant has not lost this right.

### On Rehearing.

MURRAH, Circuit Judge.

In our former opinion filed February 29, 1952, the majority of the court held that the letter of October 18, 1946, referred to in the stipulated facts, was an order under Section 2(e) of the Emergency Price Control Act, the validity, force, and effect of which were not subject to attack in the trial court.

Appellee has, throughout the hearings in this court, strenuously insisted that even if the letter was a 2(e) order, this was not an action for its enforcement. It has contended that nowhere in the trial of this case was the letter treated as a 2(e) order; that only belatedly in this court and as a last resort to avoid the dilemma in which appellant found itself did it take the position that the letter was an order and that this was an action for its enforcement. It was suggested that the letter was not sufficiently pleaded or reflected in the stipulation to form the basis of an order on which an enforcement proceedings could be predicated. A consideration of these contentions, and our contrariety of views on the legal effect of the pleadings, prompted us to grant rehearing.

On rehearing, the parties stipulated that the letter and all subsequent correspondence between the parties should be made a part of the record and considered so far as relevant and material by us in determining whether as a matter of law the letter was a 2(e) order. Upon consideration of the letter and the relevant correspondence now before us, we adhere to the view that the letter was a 2(e) order, and if properly pleaded, the trial court lacked jurisdiction to consider the merits or correctness thereof.

The more difficult question is whether the action was one to enforce compliance with the order. Upon that question the parties are in sharp conflict and the court is not in entire accord, but in the view we now take of the matter it is not necessary for us to resolve that question. By their stipulation the parties have agreed that the letter shall be made a part of the record and considered by us in reaching our conclusions. Making the letter a part of the record in effect makes it a part of the complaint as though it were attached thereto. We will accordingly treat the stipulation of the parties as effecting an amendment of the complaint, and the letter a part thereof. So considered, the amended complaint, as of the date of this opinion, constitutes an action for the enforcement of the order, determining that appellees were not entitled to these subsidy payments, and this action to enforce shall be deemed to have been commenced as of the date of the mandate of this court.

Since there can be no dispute concerning the interpretation or applicability of

the order, see Fleming v. Dashiel, 9 Cir., 161 F.2d 612, the judgment is reversed and the cause remanded with directions to enter judgment for appellant as prayed for, and against appellee on its cross-complaint, provided however, that if Stanolind, or its successor, makes application under Section 204(e) of the Emergency Price Control Act of 1942, as amended July 30, 1947, 61 Stat. 619, 50 U.S.C.A.Appendix, § 924(e), to apply to the district court for leave to file in the Emergency Court of Appeals a complaint against the R.F.C., attacking the validity of the order, the judgment shall be stayed pending disposition of the proceedings in the Emergency Court of Appeals.

PICKETT, Circuit Judge (on rehearing).

I have been unable to reach the conclusion that the letter of October 18, 1946, was an order as contemplated by Sec. 2(e) of the Emergency Price Control Act of 1942. Neither do I think that this court should allow amendments to pleadings which would change a cause of action from that upon which the Trial Court disposed of a case. The final disposition of this case, however, does provide a method whereby the appellants may obtain a review in the Emergency Court of Appeals.