RECONSTRUCTION FINANCE CORP. v. SERVICE PIPE LINE CO.

No. 4600.

United States Court of Appeals, Tenth Circuit.

July 27, 1953.

---

David A. Richardson, Oklahoma City, Okl. (George E. McConley and Arthur J. Harvith, Washington, D. C., on the brief), for appellant.

Ray S. Fellows, Tulsa, Okl. (Cecil L. Hunt, T. W. Arrington and Charles R. Fellows, Tulsa, Okl., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

MURRAH, Circuit Judge.

This is an appeal from a judgment of the District Court of the Western District of Oklahoma, on our mandate in R. F. C. v. Service Pipe Lines Co., 10 Cir., 198 F.2d 775. Aside from the appellate jurisdictional question presently noted, the question for decision concerns the allowance of interest upon the claim.

The complaint prayed for interest from the date of the demand, but the trial court rendered judgment for the defendant. In the language of the opinion, the mandate reversed and remanded the case with directions to enter judgment for the appellant "as prayed for", provided however that if Service Pipe Line Company made application under Section 204(e) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 924(e), to the District Court for leave to file in the Emergency Court of Appeals a complaint against the R.F.C. attacking the validity of the order, the judgment should be stayed pending disposition of the proceedings in the Emergency Court of Appeals.

The order of the trial court on the mandate granted leave to file in the Emergency Court of Appeals a complaint attacking the 2(e) order and stayed enforcement of the judgment pending final disposition of the timely proceedings in the Emergency Court of Appeals. The second part of the court's judgment on the mandate denied the R.F. C.'s motion for judgment insofar as it prayed for interest at the rate of 6% from the date of the order of October 18, 1946. Instead, judgment was entered for the amount of the demand plus interest at the rate of 6% from the date of the judgment or December 1, 1952.

This appeal is taken from the judgment on remand upon the single point that the court erred in refusing to award interest from and after October 18, 1946, as prayed for in the complaint. The contention is that since the complaint prayed for interest on the claim from the date of the demand, and the mandate directed the entry of a judgment for the appellant as prayed for, the court was powerless to enter judgment for any other sum.

The appellee filed a motion to dismiss the appeal on the grounds that the order or judgment on the mandate from which the appeal is taken is not final and appealable under 28 U.S.C. § 1291.

█ Despite all that has been said of what constitutes a final and appealable order under Section 1291, the question continues to confound the practitioner and perplex the judge with increasing complexity. Perhaps the most apt and facile description of a final and appealable order is one which gives all contemplated relief, provides with reasonable completeness for giving effect to the judgment, and leaves nothing to be done in the case save to superintend, ministerially, the execution of the decree. City of Louisa v. Levi, 6 Cir., 140 F.2d 512; Wrisley Distribution Co. v. Serewicz, 7 Cir., 158 F.2d 721. If anything remains but to execute the judgment or decree, it is not deemed final and appealable. Bendix Aviation Corp. v. Glass, 3 Cir., 195 F.2d 267; Baltimore & Ohio R. Co. v. United Fuel Gas Co., 4 Cir., 154 F.2d 545.

█ In the determination of finality and appealability in our case, we need not go beyond the plain language and intendment of the statute which qualifies and conditions the order from which this appeal is taken. The provisions in the opinion and mandate with respect to the stay were only

declaratory of the rights granted by Section 204(e), and the order was necessarily in obedience to the mandate. It neither enlarged nor contracted the provisions of the statute. And, Section 204(e), providing that stays thereunder shall be granted in civil proceedings "only after judgment", clearly contemplates the entry of a final judgment —one from which an appeal lies. See McRae v. Creedon, 10 Cir., 162 F.2d 989, 993. Indeed, the finality of the order from which the appeal is taken is prerequisite to the proceedings in the Emergency Court of Appeals. Furthermore, if the 2(e) order is validated, nothing remains for the trial court save to vacate the judgment and nullify the order. Neither contingency involves the exercise of judicial discretion depriving the judgment of appealable finality. The time for taking an appeal by the R.F.C. commenced to run from the "entry of the judgment appealed from" and the contingency of its enforcement does not operate to extend that time.

■ Our mandate directing the entry of a judgment as "prayed for" did not leave the question of the allowance of interest open to the trial court on remand as in Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F.2d 780. In that case, we neither directly nor impliedly precluded a consideration of the question of interest on remand. Here, however, by clear implication, we directed the entry of a judgment with interest on the claim at the rate of 6% from the date of the demand, and the trial court was powerless to order otherwise. Briggs v. Pennsylvania R. R. Co., 334 U.S. 304, 68 S.Ct. 1039, 92 L.Ed. 1403. At the same time, it is fair to state that the question of allowing interest on the claim was neither presented to nor considered by this court in the former appeal. The trial court had no occasion to consider it and our implied inclusion of interest in the mandate was obviously without thought or consideration of its legal justification.

■ The question whether interest should be allowed on the claim from the date of the demand presents a substantial question deserving our deliberate judgment. Yet, on the face of the mandate as it now stands,

further consideration of the matter is foreclosed here as well as in the trial court. But inasmuch as the mandate is before us for interpretation and enforcement, we are at liberty to reexamine the basis on which interest was impliedly awarded in the directed judgment. And, our prerogative to do so is conceded.

■ Having in mind that interest is compensation for the use of money, and in cases of this kind is allowable as damages for the delayed payment of a contractual obligation to the government in accordance with federal notions of practical justice and fairness, we look to the record in each case to justify its allowance or disallowance. Board of County Commissioners of Jackson County v. U. S., 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361; Billings v. United States, 232 U.S. 261, 284, 34 S.Ct. 421, 58 L.Ed. 596; Rodgers v. United States, 332 U.S. 371, 68 S.Ct. 5, 92 L.Ed. 3; United States v. Bonell, 9 Cir., 180 F.2d 145; Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F. 2d 780; United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998; Continental Oil Co. v. United States, 9 Cir., 184 F.2d 802; Wilson & Co., v. R. F. C., Em.App., 194 F.2d 1016.

■ The amount claimed, and for which judgment was entered, was admittedly paid by an agency of the government to the Pipe Line Company as a subsidy on oil purchased by the Company and as to which the prescribed subsidy was payable. The claims for the subsidy were submitted on prescribed forms in which the Company agreed to furnish all requested information in substantiation of the claims, and also significantly agreed that if, upon examination and audit of its books, records and other supporting data, any claim paid was found to be incorrect, the amount thereof became due and payable to the governmental agency and should be returned to it upon demand. After an audit of the available books and records, it was determined by the governmental agency that the subsidy was not payable on the particular oil, and demand was made for the amount of the

subsidy. The validity of that determination is now being litigated in the proper forum. If the determination of the governmental agency is invalidated, the question of interest will be moot. If, however, the determination is upheld, the Pipe Line Company has had the use of the government's money under an expressed and implied promise to return it upon demand. That demand was made on October 18, 1946, and it follows that in justice and fairness, the Pipe Line Company should pay just compensation for the use of the money during the time it was erroneously withheld. Cf. Wilson & Co. v. R. F. C., Em.App., 194 F.2d 1016; United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998.

The question remains what rate of interest will justly compensate the government for loss of use of its money during the withholding period. Wilson & Co. v. R. F. C., supra, quotes from a bulletin issued in 1944, stating it to be the policy of the Defense Supplies Corporation to collect interest on money paid out to applicants who were determined not to be entitled to it from the date of the payment at the rate of 4%. And, the opinion quotes from another bulletin of the same agency dated December 30, 1944, instructing its agencies to advise packers against whom claims for overpayments were pending that "interest will run at the rate of 4% from the date of disbursement"; and still another bulletin issued in 1947 proclaiming a policy to collect 4% interest on obligations due it. And, the opinion goes on to relate the established practice of the agency to collect interest apparently at the rate of 4% on amounts due it for subsidy payments. Having in mind the cost of money to the government at the time material here, and the money market in general, we think that 4% interest is just compensation.

The order of the District Court is accordingly reversed with directions to enter judgment in favor of the R.F.C. and against the Pipe Line Company for the amount of the claim, plus interest at the rate of 4% from and after October 18, 1946. In all other respects, the order and judgment of the court remains in full force and effect.

PICKETT, Circuit Judge (dissenting in part).

I agree with what the majority opinion says relative to the finality of the order of the District Court from which this appeal was taken. I disagree with the conclusion as to the allowance of interest.

The action is one which arises solely under the laws of the United States. Therefore, the right to interest is to be determined by the federal courts and is not governed by state statutes or state court decisions. Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. In the absence of a federal statute controlling the right to interest, the federal courts have developed a rule that interest shall be allowed as damages, "according to their concept of the demands of justice and practicality." Phillips Petroleum Co. v. Oldland, 10 Cir., 187 F.2d 780, 783, certiorari denied 342 U.S. 816, 72 S.Ct. 30, 96 L.Ed. 617. In Rodgers v. United States, 332 U.S. 371, at page 373, 68 S.Ct. 5, 7, 92 L.Ed. 3, it was said, "As our prior cases show, a persuasive consideration in determining whether such obligations shall bear interest is the relative equities between the beneficiaries of the obligation and those upon whom it has been imposed." In United States v. Star Construction Co., Inc., 10 Cir., 186 F.2d 666, 669, we said: "If the net amount due on determination had been a liquidated amount, or if it was susceptible of being arrived at by computation, then the court in the exercise of its discretion could have awarded interest from the date payment was demanded.

\*    \*    \*    \*    \*    \*

"Finally, interest was not allowable as of right, but the allowance or disallowance thereof rested in the discretion of the trial court." Cf. Board of Commissioners of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Chisholm v. House, 10 Cir., 183 F.2d 698; Continental Oil Co. v. United States, 9 Cir., 184 F.2d 802.

Under the Emergency Price Control Act of 1942, to stimulate the production of oil in the United States, it was determined that the United States would pay a subsidy on crude oil produced from what is known as

"stripper wells". The purchaser of this oil paid the producer the posted price to which was added the subsidy. Upon application, the amount of the subsidies was refunded. It is conceded that the oil produced qualified for the subsidy payments and ordinarily the purchaser would have been entitled to the refund. A dispute arose because the defendant used a quantity of crude oil from the pipe line stream as fuel in its pumping stations. The stripper oil in question was used to replace the oil used for fuel and other line losses. Oil used as fuel oil was not eligible to receive the subsidy. (Revised Maximum Price Regulation No. 436) No contention is made that stripper oil purchased was actually used as fuel oil. So far as is known, substantially all of it was transported to a refinery for processing. Its identity as a replacement for fuel oil was merely a bookkeeping entry.

The case was tried in the District Court as an action for money had and received where a judgment was entered for the defendant. On appeal, it was contended for the first time that a letter demanding repayment of the sum received by the defendant was an order of the R.F.C., and that its validity could be questioned only in the Emergency Court of Appeals under the procedure provided for in the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 924(e). The contention was sustained and the case was remanded with instructions to enter judgment for the plaintiff as prayed for, subject to the defendant's right to proceed in the Emergency Court of Appeals. 198 F.2d 775. The judgment is for an amount over and above the posted field price for oil. The purchaser received no benefit from the increased price and if it is not refunded as contemplated by the regulations it becomes a total loss. The claim of the R.F.C. is based upon exceedingly technical grounds which could not have been anticipated by a pipe line company purchasing subsidy oil. I am of the view that the plaintiff does not have an absolute right to interest and under all the circumstances the District Court acted according to equitable principles and well within the bounds of its discretion in disallowing interest.