207 F.2d 415
 RIVERVIEW PACKING CO., Inc.
v.
RECONSTRUCTION FINANCE CORP.
 No. 570.
 United States Emergency Court of Appeals.
 Heard at New York City, December 8, 1952.
 Decided September 29, 1953.
 Rehearing Denied October 20, 1953.
 
 Thurman Arnold and Milton V. Freeman, Washington, D. C., with whom Charles S. Gaines, Newark, N. J., Herman A. Greenberg, Richard A. Frank, Washington, D. C., Thomas J. Brogan, Jersey City, and Arnold, Fortas & Porter, Washington, D. C., were on the brief, for complainant.
 George Arthur Fruit, Attorney, Washington, D. C., with whom Holmes Baldridge, Asst. Atty. Gen., and Marvin C. Taylor, Atty., Department of Justice, Washington, D. C., were on the brief, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MARIS, Chief Judge.
 
 
 1
 The complaint in this action filed under section 204(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 924 (a), seeks a judgment setting aside (a) the action of the respondent in invalidating and refusing to pay the complainant's meat subsidy claims for the months of April, May and June, 1944, June, July, August, September, October, November and December, 1945, and April, May, June, September and October, 1946, aggregating $368,548.64, (b) the provisions of Revised Livestock Slaughter Payments Regulation No. 3 of Defense Supplies Corporation[1] as applied to the facts of the case and (c) Directive 41 of the Office of Economic Stabilization as applied to the facts of the case. Complainant had filed a protest with the respondent under section 203(a) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 923(a), and its protest had been denied. The protest was directed only against respondent's invalidation of and refusal to pay the subsidy claims in question. It set forth no objections whatever to either Revised Regulation No. 3 or Directive 41. Under the express terms of Section 204 (a) of the Emergency Price Control Act this court in a suit under that section may not consider an objection to a regulation or order unless it has been set forth in the complainant's protest.[2] Accordingly we are without power to consider the complainant's present contentions with respect to the alleged invalidity of Revised Regulation No. 3 and Directive 41. Moreover since Directive 41 was not issued under section 2 of the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 902, but rather under the Stabilization Act of 1942, 50 U.S. C.A.Appendix, § 961 et seq., it is not subject to the protest and review procedure of the former act.[3] It would, therefore, not be within the competence of this court to determine the validity of that directive even if objections to it had been included in the complainant's protest. We accordingly confine our consideration to the complainant's contentions with respect to the respondent's invalidation of and refusal to pay the subsidy claims in controversy.
 
 
 2
 The respondent's letter order of June 25, 1951, denying the complainant's protest indicates that its action with respect to the complainant's subsidy claims was taken on two grounds. The first ground was that the complainant had failed to keep and present accurate records in support of its claims, that its available records failed to support its claims and that its subsidy claims were not an accurate reflection of its slaughtering operations. This first ground of invalidation applied to all the claims filed for the period beginning January 1, 1944 and ending December 29, 1945. With respect to the claims for the period January 20, 1944 to November 3, 1944 the respondent asserted a second ground of invalidation. This was that they were invalid because of the complainant's wilful violation of the set-aside requirements of War Food Order No. 75 during that period as determined by the Department of Agriculture under section 7003.10(a) of Revised Regulation No. 3 as amended. With respect to the complainant's subsidy claims for the periods from April 1 to June 30, 1946 and from September 3 to October 14, 1946 the respondent's letter order denying the protest merely indicated that these claims had not yet been verified by it and it did not suggest that they had been invalidated or would not ultimately be paid.
 
 
 3
 The complainant urges that the respondent's first ground for invalidating all of its subsidy claims for the period from January 1, 1944 to December 29, 1945 is untenable and that its action is without basis in the regulation and should be set aside. In support of this contention the complainant asserts that under the applicable provision of Revised Regulation No. 3 the respondent is a mere paying agent without discretionary power to invalidate subsidy claims which in form meet the requirements of the regulation, except to the extent that such invalidating power is conferred by the regulation. The complainant further asserts that section 7003.10(c) of Revised Regulation No. 3 as amended made it the duty of the Price Administrator and not the respondent to investigate and determine whether an applicant's subsidy claims as filed were not an accurate reflection of the applicant's operations and the amounts of payments properly due. The complainant points out that in this case not only did the Price Administrator not make such a finding but on the contrary filed with the respondent an affirmative certificate that the complainant had not engaged in any manipulative practices.
 
 
 4
 This court is, however, without power to pass upon the questions thus raised since the alleged action of the respondent invalidating the complainant's subsidy claims for 1944 and 1945 upon the grounds just discussed has not been embodied in any definite order of invalidation which could be made the subject of protest and of review by this court. The powers of this court are purely statutory and, as we have indicated, when invoked as here under section 204(a) of the Emergency Price Control Act they are limited to the review of regulations or orders issued under section 2 of the Act. We have held that Revised Livestock Slaughter Payments Regulation No. 3 and its predecessor Livestock Slaughter Payments Regulation No. 3 are regulations issued under section 2(e) of the Act[4] and that a determination by the Reconstruction Finance Corporation invalidating under the regulation a claim for a subsidy made thereunder is itself an order under section 2(e) of the Emergency Price Control Act which is subject to the protest and review procedure of sections 203(a) and 204(a) of the Act.[5] We have not thought that such a determination need be in any particular form and have regarded action by the respondent as a reviewable order when incorporated in a letter or memorandum.[6] In order to present a reviewable question to this court, however, there must be a definite order in some form which has finally invalidated the subsidy claims in question.[7] A careful examination of the transcript of administrative proceedings filed in this court in this case fails to disclose such an order.
 
 
 5
 The respondent points to two letters which it regards as embodying reviewable orders invalidating the complainant's subsidy claims upon the grounds which we have been discussing. The first is a letter dated October 1, 1945 from the deputy director of the Office of Defense Supplies of the respondent to the acting assistant manager of its agency in New York. This letter was written in the light of a report on the complainant received from the Office of Price Administration. The letter stated, inter alia:
 
 
 6
 "* * * Even in the absence of OPA action, we should not ordinarily accept corrected claims in any case where it appeared the applicant had deliberately reported figures on his claims which did not reflect his actual operations and which resulted in greater subsidy payments than the applicant was entitled to.
 
 
 7
 "The OPA report indicates that this is the latter type of case. Consequently, the applicant should be given two alternatives; one, to withdraw the claims for the periods of February through July, 1945, inclusive and to make restitution of all amounts paid on these claims. If the slaughterer chooses this alternative, RFC will take no further action. The second alternative is for the slaughterer to have an audit made in support of his claims. This audit should, of course, be made at the applicant's expense and by an independent public accountant acceptable to this office your supervision. If this latter alternative is accepted, it should be made quite clear to the applicant that we should not necessarily accept corrected claims if the audit report does not support the original claims.
 
 
 8
 "The applicant should also be notified that claims will not be paid for June, 1945 or subsequent months until we are satisfied that any such claim is an accurate reflection of the applicant's actual operations. In other words, we should have to have an independent audit report in support of each such claim. Also we shall not accept current or future claims unless the applicant immediately installs detailed accurate record keeping system and agrees not only to keep detailed records but to exercise care in the preparation of the subsidy claims."
 
 
 9
 The complainant was notified of the alternatives proposed in this letter and it adopted the second of them, retaining with the approval of the respondent the accounting firm of Adler, Lowengrub & Company to make the audit suggested.
 
 
 10
 We think it is quite clear that the letter of October 1, 1945 does not embody a definite or final order of invalidation. On the contrary it indicates that the respondent intended to give the complainant the alternatives of either withdrawing its claims and making restitution of the amounts paid on them or of having an independent audit made in support of the claims. The latter, as we have seen, is the course which the complainant actually followed and, as the transcript discloses, the claims in question were subsequently given further consideration in the light of the report of the accountants which the complainant employed at the respondent's suggestion.
 
 
 11
 The second letter to which the respondent points as embodying a reviewable order is one dated May 21, 1946, from the acting assistant manager of its New York agency to the complainant. This letter was written following the consideration by the respondent of the report of the accountants, Adler, Lowengrub & Company. The letter contained the following pertinent statements:
 
 
 12
 "Consideration of the information submitted to this office by Adler, Lowengrub and Company, as determined by the audit of your records and operations, has revealed that wide discrepancies existed between the distribution of chilled carcass weights of beef by grades as graded by the Federal Grader, and compared to the sales and inventory records maintained by you.
 
 
 13
 "In view of this, it would appear that the beef was sold on the basis of grades different from that determined by the Federal Grader, and the sales weights by grades did not reflect the actual operations of your slaughter. Claims for subsidy based on sales weights at such variance with Federal Grading are, therefore, invalid.
 
 
 14
 "Consequently, the following courses of action are open to you insofar as the claims for cattle slaughter filed with this office on which payments have been made:
 
 
 15
 "1. Explain the discrepancies to our satisfaction.
 
 
 16
 "2. Obtain a ruling in writing from the National Office of OPA to the effect that claims filed on Forms DS-T-55 showing chilled carcass weights by grades as derived from sale and inventory records are acceptable to that office as a basis of reporting.
 
 
 17
 "3. Withdraw all cattle claims filed on Forms DS-T-55 and make restitution to the Reconstruction Finance Corporation on all amounts paid thereon."
 
 
 18
 It is true that this letter does state that "Claims for subsidy based on sales weights at such variance with Federal Grading are, therefore, invalid." Standing alone this statement might conceivably be construed as an order invalidating the complainant's subsidy claims which were then under consideration. But it does not stand alone. On the contrary other statements contained in the letter taken with what followed later make it entirely clear that the letter was not intended to be a definite or final invalidation of the subsidy claims. In the letter itself immediately following the statement just quoted appears the suggestion that three courses of action were open to the complainant, only one of which, the third, would involve the invalidation and withdrawal of the claims. If the complainant should be able to explain the discrepancies in the claims to the satisfaction of the respondent or if it should obtain a written ruling from the Office of Price Administration that the claims as filed were acceptable to that office as a basis of reporting it is clear from the letter that the claims might be allowed and paid.
 
 
 19
 That the letter of May 21, 1946 was intended to be a letter of advice to the complainant as to its future action with respect to the claims and not a definite and final invalidation of them appears from a letter also dated May 21, 1946 from the acting assistant manager of the respondent's New York loan agency to the chief of its food subsidy branch in Washington, transmitting copies of the letter and describing it as "our letter of advice to the captioned slaughterer embodying your comments and instructions." Moreover on December 5, 1946 the acting assistant manager of the New York agency of the respondent wrote to the complainant with respect to its unpaid meat subsidy claims for June to December, 1945 and April to June, and September and October, 1946, as follows:
 
 
 20
 "We acknowledge receipt of your recent claim for subsidy.
 
 
 21
 "Payment is being withheld for the following reasons:
 
 
 22
 "1. The completion of the examination, now being made by this office, to establish the validity of all claims previously paid.
 
 
 23
 "2. The receipt of a statement from Regional OPA that: (a) there is no action pending or contemplated against you, (b) you have filed all required reports with OPA, and (c) either they show no violations that would affect your subsidy claims, or the necessary action has already been taken and such subsidy claims have already been affected.
 
 
 24
 "Subsidy rights will be forfeited entirely if any reports due OPA are not filed promptly."
 
 
 25
 Here is an unqualified statement by the respondent in December 1946 that it was then still conducting an examination of all of the complainant's subsidy claims, those which had been previously paid as well as the unpaid claims, in order to establish their validity. It is thus clear beyond doubt that the letters of October 1, 1945 and May 21, 1946 were not intended definitely or finally to invalidate any of the complainant's subsidy claims but merely to suspend payment thereon until their validity had been determined after full investigation. They are, therefore, not reviewable by this court under section 204(a) of the Emergency Price Control Act. The transcript of administrative proceedings does not disclose any later action by the respondent embodying an invalidation of the complainant's subsidy claims which could have been the subject of the complainant's protest and of the present review by this court. It necessarily follows, therefore, that this court is without power to pass upon the question as to whether the action of the respondent in failing to pay the unpaid subsidy claims and in seeking restitution by the complainant of the amounts paid on the earlier claims was lawfully based upon the first ground assigned by the respondent therefor.
 
 
 26
 In reaching the conclusion just stated we do not overlook the fact that in the respondent's letter order dated June 25, 1951 denying the complainant's protest the statement is made that "it has been determined that the slaughterer's cattle claims for this period [January 1, 1944 to December 29, 1945] are invalid." It will be observed that this statement is not in the present tense. It was, therefore, undoubtedly intended as a description of the prior action of the respondent, albeit an inaccurate one as we have seen, and not as an independent determination of the invalidity of the subsidy claims in question. If, however, the quoted language was intended to be an original determination of invalidity it came too late. For on February 26, 1947, more than four years before the date of the letter denying the protest, the complainant had brought suit for its unpaid subsidies in the United States District Court for the District of New Jersey and on June 10, 1947 the respondent had filed in that suit a counterclaim seeking recoupment of the 1944 and 1945 subsidies which had been paid. In that suit the district court had entered judgment on July 28, 1950, Riverview Packing Co. v. Reconstruction Finance Corp., D.C., 92 F.Supp. 376, and its judgment is now on appeal in the Court of Appeals for the Third Circuit.* Under these circumstances an order by the respondent on June 25, 1951 purporting to determine the validity of the complainant's subsidy claims would amount to an attempt by a party to the pending law suit to adjudicate a question which had previously been committed to the determination of the court. The order would, therefore, not have been one authorized by Section 2 of the Emergency Price Control Act and would have been invalid.[8]
 
 
 27
 We turn then to the second ground upon which the respondent relied for its invalidation and demand for repayment of certain of the claims, namely, those for the period from January 20, 1944 to November 3, 1944. All of these claims were originally paid by the respondent but those for three months, from April 3, 1944 to July 1, 1944, were subsequently recouped by it out of payments made on later claims. Here, in striking contrast to the situation with respect to the first ground, there is in the transcript an order definitely, finally and unequivocally invalidating the claims. This appears in a letter dated November 28, 1945, from the deputy director of the Office of Defense Supplies of the respondent to the acting assistant manager of its New York agency, which contains the following statement:
 
 
 28
 "In accordance with Mr. Kitchen's letter of November 21, we declare invalid all claims of this applicant for the period January 20, 1944, to November 3, 1944."
 
 
 29
 It appears from the transcript that this order of invalidation was communicated to the complainant by letter of December 4, 1945. It was based, as it indicates, upon a letter to the respondent dated November 21, 1945 from C. W. Kitchen, Assistant Administrator, Production and Marketing Administration, United States Department of Agriculture, stating his finding that the complainant had wilfully violated War Food Order No. 75, as amended and supplemented, during the entire period from January 20, 1944 to November 3, 1944, by failing to set aside beef for the armed forces in the amounts required, and recommending that subsidy payments be withheld covering this entire period and, if subsidy payments had already been made, that appropriate action be taken to recover such payments.
 
 
 30
 Section 10 of Regulation No. 3 and its successor, section 7003.10 of Revised Regulation No. 3, continuously from their inception contained the provision that Defense Supplies Corporation (after June 30, 1945 Reconstruction Finance Corporation) should have the right to declare invalid, in whole or in part, any claim filed by an applicant who in the judgment of the War Food Administrator (after June 30, 1945 the Secretary of Agriculture)[9] or the Price Administrator had wilfully violated any regulation of their respective agencies applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat. It was under the authority of section 7003.10(a) of Revised Regulation No. 3 as amended[10] that the respondent acted in invalidating on November 28, 1945 complainant's subsidy claims for the period from January 20, 1944 to November 3, 1944.[11] The complainant nonetheless attacks this action of the respondent and asserts it to be invalid on several grounds.
 
 
 31
 The complainant first argues that the finding and certification of willful violation of War Food Order No. 75 was required by section 7003.10(a) of the regulation to be made by the Secretary of Agriculture and that it was not made by him but by the Assistant Administrator of the Production and Marketing Administration of the Department of Agriculture. Accordingly, says the complainant, it does not support the respondent's order. This contention is, however, wholly without merit. By an amendment to War Food Order No. 78 issued October 16, 1945 by the acting Secretary of Agriculture the Assistant Administrator in charge of Regulatory and Marketing Service Work, Production and Marketing Administration, United States Department of Agriculture, was authorized, inter alia, to exercise the functions, duties, powers, authority and discretion conferred upon the Secretary of Agriculture in connection with priority and allocation matters.[12] The Secretary had been authorized by the President to delegate these functions to such persons within the Department of Agriculture as he might designate.[13] Mr. Kitchen was the Assistant Administrator in charge of Regulatory and Marketing Service Work, Production and Marketing Administration, Department of Agriculture. He was, therefore, the authorized delegate of the Secretary of Agriculture to perform the functions of the latter under section 7003.10(a) of Revised Regulation No. 3, as he had previously been of the War Food Administrator.[14] The respondent was accordingly entitled to regard Mr. Kitchen's action as that of the Secretary of Agriculture in this case.
 
 
 32
 The complainant next contends that since no criminal proceedings were pending against it for wilful violation of War Food Order No. 75 the respondent had no right under section 7003.10(a) of the regulation to invalidate its claims on that ground. It urges that the provisions of section 7003.10(a) must be limited by the overriding directions of section 7(b) (1) of Directive 41[15] to those wilful violations only which have been referred to the United States Attorney for prosecution. It is undoubtedly true, as this court indicated in San Antonio Packing Co. v. Reconstruction Finance Corp., Em.App., 1950, 182 F.2d 614, 618, that the operation of section 7003.10(a) is to be limited by section 7(b)(1) of Directive 41.
 
 
 33
 The difficulty with complainant's contention, however, is that the limitation imposed by section (7)(b)(1) of Directive 41 applies only to determinations by the Price Administrator that a subsidy applicant had wilfully violated a regulation of his agency. This provision of the directive made no reference whatever to determinations by the War Food Administrator or the Secretary of Agriculture with respect to wilful violations of regulations of their agencies. Accordingly it imposed no limitation upon the generality of the language of section 7003.10(a) so far as concerns the invalidation of subsidy claims upon a determination by the Secretary of Agriculture that the applicant had wilfully violated War Food Order No. 75. The complainant contends that if section 7003.10(a) of Revised Regulation No. 3 is thus construed in accordance with its plain language it is invalid. This, however, being an attack upon the regulation itself which was not made in the complainant's protest, is not a matter which we may consider in this case.
 
 
 34
 The third ground urged by the complainant for holding the invalidating order of November 28, 1945 to be unlawful is that the respondent was not authorized by section 2(e) of the Emergency Price Control Act, under which the subsidy program was authorized, to condition the right to subsidy upon compliance with governmental regulations such as War Food Order No. 75 which had no relationship to the objective of the Act to obtain maximum production of meat. But, as we have seen, Revised Regulation No. 3 issued under section 2 (e) expressly authorized the respondent to invalidate subsidy claims for wilful violation of such an order. Here again, therefore, the complainant's attack is in reality against the regulation rather than the invalidating order and not having been made in the protest cannot be considered here.
 
 
 35
 Finally the complainant strongly urges that the order invalidating its subsidy claims upon the basis of Mr. Kitchen's finding that it had wilfully violated War Food Order No. 75, has deprived it of due process of law in that it has not been accorded a hearing upon the question of its alleged wilful violation of the order. This contention also is without merit. In Armour & Co. v. Reconstruction Finance Corporation, Em.App., 1947, 162 F.2d 918, 923, this court held, in construing section 7003.10(a) of Revised Regulation No. 3, that a subsidy claimant whose claim is invalidated by Reconstruction Finance Corporation under the authority of section 7003.10(a) on the basis of a determination by the Price Administrator that the claimant has wilfully violated a livestock or meat regulation may secure a hearing on that question by filing his protest with Reconstruction Finance Corporation against the invalidating action and therein asserting as a ground of objection that he is innocent of the violation charged and that the Administrator's finding of wilful violation is erroneous. We held that in such a protest proceeding Reconstruction Finance Corporation must determine de novo, from the evidence offered in the proceeding, whether the claimant has in fact wilfully violated the regulation.
 
 
 36
 The hearing thus provided by the protest procedure is equally applicable to a subsidy claimant whose claim has been invalidated on the basis of a determination by the Secretary of Agriculture that the claimant has wilfully violated a regulation of his department. It follows that the complainant was entitled to have the question of its wilful violation of War Food Order No. 75 determined de novo in the protest proceeding which it brought in this case. It has, therefore, not been denied the opportunity of a hearing which due process of law requires. An examination of the protest filed by the present complainant discloses no suggestion of any complaint or objection on its part that Mr. Kitchen's finding that it had wilfully violated War Food Order No. 75 was erroneous and that it was in fact innocent of any such violation. The question of the complainant's violation of the order was, therefore, not presented by it to the respondent for determination in the protest proceeding. It is accordingly not before this court for consideration in the present case.
 
 
 37
 It follows from what has been said that the complainant has shown no basis for our holding in this case that the order of the respondent of November 28, 1945 invalidating its subsidy claims for the period January 20, 1944 to November 3, 1944 was invalid. The order must, therefore, be held valid and the complaint dismissed.
 
 
 38
 A judgment will be entered dismissing the complaint.
 
 
 
 Notes:
 
 
 [1]
 Defense Supplies Corporation was dissolved on July 1, 1945 and its functions were transferred to the respondent, Reconstruction Finance Corporation, by the Act of June 30, 1945, 59 Stat. 310, 15 U.S.C.A. § 611 note. Revised Regulation No. 3 as amended then became a regulation of Reconstruction Finance Corporation, 10 FR 11155
 
 
 [2]
 J. J. Schmitt & Co. v. Turney, Em.App., 1948, 169 F.2d 425, 428; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App., 1949, 176 F.2d 908, 913; Spevak v. Reconstruction Finance Corp., Em.App., 1952, 194 F.2d 1015
 
 
 [3]
 Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App., 1951, 188 F.2d 368, 373-374
 
 
 [4]
 Illinois Packing Co. v. Bowles, Em. App., 1945, 147 F.2d 554; Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App., 1951, 188 F.2d 368, 374
 
 
 [5]
 Armour & Co. v. Reconstruction Finance Corporation, Em.App., 1947, 162 F.2d 918, 923; Belle City Packing Co. v. Reconstruction Finance Corp., Em.App., 1948, 169 F.2d 413; Wm. Schluderberg- T. J. Kurdle v. Reconstruction, etc., Em.App., 1948, 169 F.2d 419, 420, certiorari denied 335 U.S. 846, 69 S.Ct. 68, 93 L.Ed. 396; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App., 1949, 176 F.2d 908, 912; Berchem v. Reconstruction Finance Corp., Em.App., 1951, 191 F.2d 922, 924
 
 
 [6]
 Somerville Dressed Meat Co. v. Reconstruction Finance Corporation, Em.App., 1947, 159 F.2d 716; Armour & Co. v. Reconstruction Finance Corporation, Em. App., 1947, 162 F.2d 918, 923; Merchants Packing Co. v. Reconstruction Finance Corp., Em.App., 1949, 176 F. 2d 908, 912; Silver Pine Oil Co. v. Reconstruction Finance Corp., Em.App., 1953, 205 F.2d 835
 
 
 [7]
 Federated Meat Corp. v. Reconstruction Finance Corp., Em.App., 1950, 183 F.2d 588, 591
 
 
 *
 207 F.2d 361
 
 
 [8]
 Collins v. Fleming, Em.App., 1947, 159 F.2d 431, certiorari denied 330 U.S. 850, 67 S.Ct. 1094, 91 L.Ed. 1293; United States v. McCrillis, 1 Cir., 1952, 200 F. 2d 884, 891
 
 
 [9]
 By Executive Order No. 9577, 50 U.S. C.A.Appendix, § 601 note, effective June 30, 1945, the War Food Administration and the Office of the War Food Administrator were terminated and the functions, duties and powers of the War Food Administrator were transferred to the Secretary of Agriculture. 10 FR 8087
 
 
 [10]
 7003.10Invalid claims — (a) Compliance with other regulations. Reconstruction Finance Corporation shall declare invalid, in whole or in part, any claim filed by an applicant who, in the judgment of the Secretary of Agriculture or the Price Administrator, has wilfully violated any regulation or order of their respective agencies applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat, and any claim of any applicant who the Price Administrator certifies to Reconstruction Finance Corporation has been determined in a civil proceeding to have violated a substantive provision of any regulation or order of the Office of Price Administration applicable to the purchase or sale of livestock or to livestock slaughter or to the sale or distribution of meat." 10 FR 8073, 11155.
 
 
 [11]
 See Penn Abattoir Co. v. Reconstruction Finance Corp., Em.App., 1952, 197 F.2d 877
 
 
 [12]
 10 FR 13041
 
 
 [13]
 Executive Order No. 9280, U. S. Code Congressional Service 1942, p. 1833, issued December 5, 1942, 7 FR 10179
 
 
 [14]
 8 FR 13696; 14251
 
 
 [15]
 10 FR 4494, 4495; 11 FR 1215