**UNITED STATES v. BASS.**

**BASS v. UNITED STATES.**

**Nos. 14947, 14948.**

United States Court of Appeals
Eighth Circuit.

July 21, 1954.

Donald Gunn, St. Louis, Mo., for Harry C. Bass, Jr., d/b/a Western Beef Co.

Alan S. Rosenthal Atty., Department of Justice, Washington, D. C. (Warren E. Burger, Asst. Atty. Gen., Harry Richards, U. S. Atty., W. Francis Murrell, Asst. U. S. Atty., St. Louis, Mo., and Samuel D. Slade, Atty., Department of Justice, Washington, D. C., were with him on the brief), for the United States.

Before SANBORN, JOHNSEN and COLLET, Circuit Judges.

COLLET, Circuit Judge.

This is an action whereby plaintiff seeks to recapture a meat subsidy payment in the amount of $32,773.14, together with 4% interest from the date of disbursement. From a summary judgment entered below in favor of plaintiff for the principal sum, both parties appeal, defendant on the ground that plaintiff is not entitled to judgment as a matter of law, and plaintiff on the ground that the trial court erred in its allowance of interest.

Defendant is a livestock slaughterer who, like others engaged in that industry, was the recipient of substantial federal meat subsidies during and immediately after the critical years of World War II. In creating the subsidy program it was the intent of Congress that required levels of production be maintained in private industries, including those of an economically and strategically critical nature. This subsidy program found expression in the Emergency Price Control Act of 1942, 56 Stat. 26, § 2(e), 50 U.S.C.A.Appendix, § 902(e), which provided, inter alia, "Whenever the Administrator determines that the maximum necessary production of any commodity is not being obtained or may not be obtained during the ensuing year, he may, on behalf of the United States, * * * make subsidy payments to domestic producers of such commodity in such amounts and in such manner and upon such terms and conditions as he determines to be necessary to obtain the maximum necessary production thereof: * * *." It was pursuant to this Act, as amended, that defendant received the subsidy here in question.

The record discloses that on June 4, 1946, defendant filed claims for a meat subsidy totaling $38,860.50. The claims covered defendant's operations from May 6, 1946, to June 1, 1946, and, pursuant to the expeditious policies of the Reconstruction Finance Corporation (hereinafter referred to as RFC), received tentative approval on June 5, 1946. Two days later, on June 7, 1946, defendant received payment in the amount of $38,626.40. It should be noted that the rapidity of this tentative approval and payment stemmed from the practical realization, implemented into policy, that delay in receipt by a given claimant might seriously curtail continued business operations. Yet the right was reserved, following necessarily more time-consuming administrative examination, later to declare a given payment invalid upon certification to the RFC by the Department of Agriculture that a subsidy claimant had exceeded his authorized slaughtering quota by more than 3%. Dir. 41, Amend. 4, O.E.S., April 16, 1946 (11 F.R. 4340); Revised Reg. No. 3, Sec. 7003.10(a), January 19, 1945 (10 F.R. 4243); Amend. 17 to Sec. 7003.10(a), April 26, 1946. It was pursuant to these

regulations that on June 19, 1946, the Department of Agriculture certified to the RFC that the defendant herein had exceeded his authorized slaughtering quota by more than 3%. Consequently, on July 11, 1946, the RFC notified defendant that his May claim for a subsidy had been invalidated and that a claim receivable had been set up in favor of the United States for the amount already tentatively paid. Said notice of invalidation also provided "interest @ 4% from the date of Disbursement until paid."

Defendant lent a deaf and unresponsive ear to repeated government demands for repayment of the subsidy which, after application of several set-offs never in contest, had been set in January, 1947, at the figure of $32,773.14. On December 13, 1950, defendant filed a formal protest to the RFC's invalidation of the subsidy, said protest being denied by the RFC on June 25, 1951. Thereupon, on July 26, 1951, defendant sought review of said administrative action before the Emergency Court of Appeals. That court dismissed defendant's complaint for want of jurisdiction, on the ground that it was not filed within thirty days of the denial of protest, as required under Amodio v. Reconstruction Finance Corp., Em.App., 191 F.2d 862. From that judicial determination defendant did not seek further review.

While defendant's claim was still pending before the Emergency Court of Appeals, the United States brought the instant action on its account receivable in the District Court below and, upon dismissal of defendant's action by the Emergency Court of Appeals, the District Judge entered, upon motion, the summary judgment from which defendant appeals. Though the District Judge awarded the United States the principal sum prayed for of $32,773.14, 4% interest was awarded only from June 25, 1951, the date the RFC denied defendant's formal protest. It is from this single facet of the judgment that plaintiff appeals, insisting that interest should run from the date of the original subsidy disbursement as provided for in the RFC's original invalidation order of July 11, 1946.

Turning now to the legal merit of the parties' respective contentions, defendant vigorously argues that we are not here confronted with the validity or invalidity of a final order duly issued by the RFC, which, defendant concedes, under Section 204(d) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 924(d), would have been beyond the jurisdiction of this court to determine. Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 207 F.2d 361, 415. Defendant insists that we are faced not with the question of the validity of an RFC order but, rather, with a distinguishable inquiry, viz., has there been an "order" at all, regardless of validity. Further, it is argued that plaintiff in its complaint referred to attached Exhibit B as being the RFC order declaring the subsidy invalid when, in fact, such exhibit was merely the Department of Agriculture certification that defendant exceeded his lawful slaughtering quota. Actually it was Exhibit C-4, attached to the complaint, which plaintiff relies upon as being the order and which, through inadvertence and clerical error, was mistakenly designated in the complaint as Exhibit B. Defendant insists that the trial court below went beyond the issues presented in finding Exhibit C-4 to be the order. Though in his answer defendant admitted that the RFC "issued an order as set out in Exhibit B" [1], he argues that such an admission cannot make Exhibit B an order when it was not, since "Courts are not yet bound to find and hold that black is white merely because the parties want it to be or are careless enough to have admitted it to be."

◼◼ Defendant is correct in assuming that merely because he admitted that

---

1. The RFC did not issue Exhibit B and it was not an order. It was the certification of the Department of Agriculture that defendant had violated his quota and requesting the RFC to invalidate defendant's subsidy on that account.

Exhibit B was an "order" of the RFC that would not make it such an order. But by the same token the designation in plaintiff's complaint of Exhibit B as the order of the RFC did not make Exhibit B such an order. The complaint set out the fact that the RFC had made an order invalidating defendant's May subsidy and referred to Exhibit B as being that order. The complaint then stated the total amount of the invalidated claim and immediately following the complaint stated:

"(See Exhibit 'C–4' attached hereto and made a part hereof.)"

Exhibit C–4 was attached to the complaint and showed for itself what it was. Its existence or issuance by the RFC was not specifically denied in the answer or by affidavit upon motion for summary judgment. Exhibits B and C–4 both were before the trial court. That court recognized and treated them for what they were—Exhibit B as the certification of the Department of Agriculture, Exhibit C–4 as the order of the RFC invalidating defendant's subsidy. The trial court not only had the right to do so, it was its duty to do so. Reconstruction Finance Corp. v. Service Pipe Line Co., 10 Cir., 198 F.2d 775; Simmons v. Peavy-Welsh Lbr. Co., 5 Cir., 113 F.2d 812; Dayton Bread Co. v. Montana Flour Mills Co., 6 Cir., 126 F.2d 257.

Defendant says that Exhibit C–4 was not a final order of the RFC. It was the final action of the RFC invalidating defendant's May subsidy. True there was an adjustment of the amount by giving defendant credit for money due him and thereby reducing the total which the RFC ordered him to repay, but that in nowise disturbed the finality of the invalidation of the entire May subsidy by Exhibit C–4. To constitute an order it was not necessary that the instrument follow any particular technical form. As stated by the Emergency Court of Appeals in Riverview Packing Co. v. Reconstruction Finance Corp., Em.App., 207 F.2d 415, 418:

"We have held that Revised Livestock Slaughter Payments Regulation No. 3 and its predecessor Livestock Slaughter Payments Regulation No. 3 are regulations issued under section 2(e) of the Act and that a determination by the Reconstruction Finance Corporation invalidating under the regulation a claim for a subsidy made thereunder is itself an order under section 2(e) of the Emergency Price Control Act which is subject to the protest and review procedure [before the Emergency Court of Appeals] of sections 203 (a) and 204(a) of the Act. We have not thought that such a determination need be in any particular form and have regarded action by the respondent as a reviewable order when incorporated in a letter or memorandum. In order to present a reviewable question to this court, however, there must be a definite order in some form which has finally invalidated the subsidy claims in question."

In that case the invalidating order held valid was in a letter in the following language:

"In accordance with Mr. Kitchen's letter of November 21, we declare invalid all claims of this applicant for the period January 20, 1944, to November 3, 1944."

In the present case the language used was as follows:

"May claim for Cattle and Calves invalid as certified by USDA in letter 6–19–46 for over quota slaughter in violation of Directive 41 Amendment #4 of OES. Interest @ 4% from date of Disbursement until paid."

Exhibit C–4 was a valid final order of the RFC invalidating defendant's subsidy and ordering its return. Indeed, defendant's appeal to the Emergency Court of Appeals necessarily was based upon the premise that defendant recognized the existence of an appealable final order of the RFC—a requisite to such appeal. Riverview Packing Co. v. Reconstruction Finance Corp., Em.App., 207 F.2d 415.

The order of the RFC was issued under Section 2(e) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 902(e). Merchants Packing Co. v. Reconstruction Finance Corp., Em.App., 176 F.2d 908; Evergreen Meat Co. v. Reconstruction Finance Corp., Em.App., 188 F.2d 368, 376; Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 207 F.2d 361, 366. In the latter case the court said:

"Likewise it is settled that determinations by Reconstruction Finance Corporation invalidating subsidy claims, even though informally expressed, are orders issued under section 2(e) of the Emergency Price Control Act."

Section 204(d) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 924(d), expressly vests in the Emergency Court of Appeals exclusive jurisdiction to consider the validity of regulations and orders issued under section 2 of the Act and expressly deprives all other courts of power to do so.[2] Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir., 207 F.2d 361, 366. Therefore, when this case came to trial in the District Court and the validity of the RFC's order was questioned, the only proper course for that court to pursue was to defer to the action of the Emergency Court of Appeals. And if the latter court had not passed upon the validity of the order it would have been appropriate for the court to hold the case in abeyance, as was ordered done by the Tenth Circuit in Reconstruction Finance Corp. v. Service Pipe Line Co., 198 F.2d 775, pending expeditious determination of the question in the Emergency Court of Appeals under Section 204(e) of the Act as amended, 61 Stat. 619, 50 U.S.C.A. Appendix, § 924(e). Since appeal had already been made to the Emergency Court of Appeals and the order of the RFC had become final, the District Court properly entered the judgment it did enforcing that order. Reconstruction Finance Corp. v. Service Pipe Line Co., 10 Cir., 198 F.2d 775, 781.

This leaves the sole remaining question of interest. Plaintiff insists that the trial court erred in granting interest on the principal sum awarded only from June 25, 1951, the date the RFC denied defendant's formal protest. Since the RFC order specifically provided for interest at the rate of 4% from the date of original disbursement of the subsidy, June 7, 1946, plaintiff argues that the only proper forum in which to assail that order was the Emergency Court of Appeals. Alternatively, assuming the question properly before the District Judge, plaintiff urges that such a method of computation is in any event the just course to be followed. At the very least, plaintiff insists interest should be awarded from the date repayment of the subsidy was first demanded, viz., July 11, 1946. Defendant contends that the allowance of interest was discretionary and that the trial court's discretion was properly exercised.

In the absence of a statute to the contrary, the measure of interest to be awarded upon judgment is discretionary with the court. As stated in Royal Indemnity Co. v. United States, 1941, 313 U.S. 289, 296, 61 S.Ct. 995, 998, 85 L.Ed. 1361:

2. Section 204(d), 50 U.S.C.A.Appendix, § 924 " * * * The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

"In the absence of an applicable federal statute it is for the federal courts to determine, according to their own criteria, the appropriate measure of damage, expressed in terms of interest, for non-payment of the amount found to be due. Board of Commissioners, Jackson County v. United States, 308 U.S. 343, 350, 352, 60 S.Ct. 285, 288, 289, 84 L.Ed. 313; Young v. Godbe, supra, 15 Wall. at page 565, 21 L.Ed. 250; cf. Billings v. United States, 232 U.S. 261, 284, et seq., 34 S.Ct. 421, 425, 58 L.Ed. 596."

 And in Board of Commissioners v. United States, 308 U.S. 343, 352, 60 S.Ct. 285, 84 L.Ed. 313, the court points out that interest is not recovered according to a rigid theory of compensation for money withheld but is given in response to considerations of fairness. State law will not control in cases arising under federal law. Billings v. United States, 232 U.S. 261, 34 S.Ct. 421, 58 L.Ed. 596. And it is not necessarily a bar to the allowance of interest that a claim has not theretofore been liquidated. While the practice has been frequently followed of not allowing interest on unliquidated claims, that does not result from a rule of law to that effect. The Supreme Court in Funkhouser v. J. B. Preston Co., 290 U.S. 163, 168–169, 54 S.Ct. 134, 136, 78 L.Ed. 243, said:

"Without attempting to review the numerous, and not harmonious decisions upon the allowance of interest in the case of unliquidated claims, it is sufficient to say that the subject is an appropriate one for legislative action in order to provide a definite rule. The statutory allowance is for the purpose of securing a more adequate compensation by adding an amount commonly viewed as a reasonable measure of the loss sustained through delay in payment. It has been recognized that a distinction, in this respect, simply as between cases of liquidated and unliquidated damages, is not a sound one. Whether the case is of the one class or the other, the injured party has suffered a loss which may be regarded as not fully compensated if he is confined to the amount found to be recoverable as of the time of breach and nothing is added for the delay in obtaining the award of damages. Because of this fact, the rule with respect to unliquidated claims has been in evolution (Faber v. [City of] New York, supra [222 N.Y. 255, 118 N.E. 609]), and in the absence of legislation the courts have dealt with the question of allowing interest according to their conception of the demands of justice and practicality. Miller v. Robertson, 266 U.S. 243, 258, 45 S.Ct. 73, 69 L.Ed. 265. 'The disinclination to allow interest on claim of uncertain amount seems based on practice rather than theoretical grounds.' Williston on Contracts, vol. III, § 1413."

Hence, in the final analysis the allowance of interest depends upon practical justice and fairness in compensating one for delayed payment of an obligation. Funkhouser v. J. B. Preston Co., supra; Board of Commissioners v. United States, supra.

The amount of interest allowable in the present case would, within reasonable limits, be for the trial court to determine as a matter of discretion, were it not for the fact that the RFC in its order had undertaken to fix the rate of interest and the date from which it should run, and for the further fact that the validity of the order was reviewable only by the Emergency Court of Appeals.

██ As we have heretofore stated, the order of the RFC invalidating the subsidy and providing for interest at 4% from date of payment to defendant was an order issued under section 2(e) of the Emergency Price Control Act. The provision in the order for interest was a part of a comprehensive subsidy program embracing among other things the policy that subsidy claimants would be paid promptly, before investigation of their

claims, but upon condition that if the paid claim was subsequently found to have been improperly paid its repayment would be required with interest at 4% from the date of payment. Hence the provision in the RFC's order for interest was as much a part of an order made under section 2(e) as that part which invalidated the subsidy. Such being the case, by the express terms of Section 204(d) of the Act (supra), the power of review of the order was vested exclusively in the Emergency Court of Appeals.

In Reconstruction Finance Corp. v. Service Pipe Line Co., 206 F.2d 814, the Tenth Circuit had before it an action like this but involving only the claim of the United States for the repayment of an invalidated subsidy. An order had been made by the RFC, relative to an oil subsidy, invalidating the subsidy but not fixing interest. The validity of the RFC's order invalidating the subsidy was being litigated in the Emergency Court of Appeals. Since there had been no order as to interest, the court was called upon to allow interest which, under those circumstances, it had the jurisdiction to do. The court said [206 F.2d 818]:

> "The validity of that determination [relative to the subsidy] is now being litigated in the proper forum. If the determination of the governmental agency is invalidated, the question of interest will be moot. If, however, the determination is upheld, the Pipe Line Company has had the use of the government's money under an expressed and implied promise to return it upon demand. That demand was made on October 18, 1946, and it follows that in justice and fairness, the Pipe Line Company should pay just compensation for the use of the money during the time it was erroneously withheld. Cf. Wilson & Co. v. R. F. C., Em.App., 194 F.2d 1016; United States v. United Drill & Tool Corp., 87 U.S.App.D.C. 236, 183 F.2d 998."

The rate of interest allowed was that fixed by the policy of the RFC in meat subsidy cases, 4%, as approved by the Emergency Court of Appeals in Wilson & Co. v. Reconstruction Finance Corp., 194 F.2d 1016. The Tenth Circuit recognized the binding effect of an order of the RFC made under section 2(e) and the exclusiveness of the power of review of such orders by the Emergency Court of Appeals and the Supreme Court. We agree. It follows that the trial court was without jurisdiction to review or modify the order of the RFC. The judgment should therefore be modified to allow interest in accordance with the order of the RFC, and as so modified is affirmed.

JOHNSEN, Circuit Judge (concurring separately).

I am in accord with the conclusions of the majority, except that I have some reservation on the possible implications of the holding as to the matter of interest.

Granting that Bass is not in a position to complain in any way of the propriety or fairness of the interest prescription of RFC's invalidation order, because of his failure to have made timely attack thereon in the Emergency Court of Appeals, and that interest therefore is entitled to be assessed against him here in accordance with the provisions of that order, I should not want this holding to be read to imply that a District Court would be without power in any such case to grant an allowance of interest beyond the amount fixed by RFC's invalidation order, where this seemed to the Court to be called for, as a matter of public justice, in some particular situation.

Thus, in the present situation, if RFC's invalidation order had contained a repayment prescription of "No interest", and Bass, for over 5 years, as here, had failed to make an administrative return to RFC of the subsidy payments on that basis, I think that the District Court, in a suit brought by the Government to compel a repayment of the public funds involved, could properly, under its general powers, assess such interest against him in damages, as justice to the public would seem under these circumstances to command. So, too, if the rate of interest fixed by RFC had been one percent, or

any other rate that was equitably inadequate as damages in a situation of delay and refusal to make an administrative return, I think that the Court would not be precluded from exercising its general powers to assess interest at a rate or in an amount beyond that fixed by RFC's invalidation order.

I make this reservation on any possible implication of the majority opinion against the existence of that right on the basis of such situations of recovery being treated as constituting wholly an Emergency Price Control Act matter.