UNITED STATES of America
v.
**Rex CARPENTER, Appellant.**
**No. 12260.**

United States Court of Appeals
Third Circuit.

Argued Nov. 6, 1957.

Decided Jan. 30, 1958.

Rehearing Denied Feb. 21, 1958.

Thomas N. Griggs, Pittsburgh, Pa., Paul E. Allen, Meadville, Pa. (Stuart A. Culbertson, Meadville, Pa., Leroy F. Perry, Griggs, Moreland, Blair & Douglass, Pittsburgh, Pa., on the brief), for appellant.

Robert S. Green, Washington, D. C. (Geo. S. Leonard, Acting Asst. Atty. Gen., D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., Melvin Richter, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before MARIS, KALODNER and STALEY, Circuit Judges.

MARIS, Circuit Judge.

This is a civil action brought in the District Court for the Western District of Pennsylvania by the Government against the defendant, Rex Carpenter, a livestock slaughterer, for the restitution of meat subsidy payments in the sum of $34,593.50, together with 4% interest from the dates of disbursement. The defendant appeals from a summary judgment entered on the pleadings in favor of the Government.

The subsidy payments in controversy were made upon meat produced from the slaughter of livestock on claims filed for the period January, 1944 through February, 1946, in the amount of $34,593.50, pursuant to the meat subsidy program set up under section 2(e) of the Emergency Price Control Act of 1942 as amended, 50 U.S.C.A.Appendix § 902(e), and conducted by the Defense Supplies Corporation, under its Livestock Slaughter Payments Regulation 3 [1] and Revised Regulation 3 [2] and by its successor, Reconstruction Finance Corporation.[3] Payments were made to the slaughterer upon preliminary approval subject to the right of the agency to declare the subsidy claims invalid in whole or in part upon noncompliance with the regulations and to require restitution of the subsidy payments made.[4] Under the Emergency Price Control Act final orders of invalidation of subsidy claims were reviewable only by the Emergency Court of Appeals and may not be attacked in any other court.[5]

1. 8 F.R. 10826; 15799; 9 F.R. 1820; 1821.

2. 10 F.R. 4241; 7539; 8073; 10 F.R. 11153; 11154.

3. 10 F.R. 11155. See also Directive 41 of the office of Economic Stabilization, 10 F.R. 4494; 11 F.R. 1215.

4. §§ 7003.4, 7003.5 and 7003.10 of Regulation 3, 8 F.R. 10827–10829; §§ 7003.4, 7003.9 and 7003.10 of Revised Regulation 3, 10 F.R. 4241–4243.

For extended discussions of this program see Armour & Co. v. Bowles, Em. App.1945, 148 F.2d 529, certiorari denied 325 U.S. 871, 65 S.Ct. 1411, 89 L.Ed. 1989; Illinois Packing Co. v. Snyder, Em.App.1945, 151 F.2d 337; Earl C. Gibbs, Inc., v. Defense Supplies Corporation, Em.App.1946, 155 F.2d 525, certiorari denied 329 U.S. 737, 67 S.Ct. 51, 91 L.Ed. 637; Wm. Schluderberg-T. J. Kurdle Co. v. Reconstruction Finance Corp., Em.App.1948, 169 F.2d 419, certiorari denied 335 U.S. 846, 69 S.Ct. 68, 93 L.Ed. 396; Earl C. Gibbs, Inc., v. Reconstruction Finance Corp., Em.App. 1948, 169 F.2d 654; Merchants Packing Co. v. Reconstruction Finance Corp., Em. App.1949, 176 F.2d 908; Evergreen Meat Co. v. Reconstruction Finance Corp., Em. App.1951, 188 F.2d 368.

5. Riverview Packing Co. v. Reconstruction Finance Corp., 3 Cir.1953, 207 F.2d 361;

The complaint charged that by a letter of October 29, 1946 the Reconstruction Finance Corporation advised the defendant that certain of his subsidy claims had been declared invalid and that a claim receivable in the amount of $34,593.43 had been entered against those claims because they were not sufficiently supported by the defendant's records. The defendant was given two alternate courses; either to withdraw the claims and return the amounts paid thereon or to support them at his own expense through the work of independent accountants approved by the Chief Auditor of the agency and working under the agency's supervision.[6] The complaint further charged that a second letter was sent to the defendant under date of January 8, 1948 in which he was advised that not having heard from him in response to the agency's requests for settlement of his indebtedness the case was being forwarded to Washington with the recommendation that it be referred to the Department of Justice.[7]

The defendant filed a motion to dismiss the complaint which was denied by the district court. 137 F.Supp. 517. Thereupon the defendant filed his answer asserting that the letters of October 29, 1946 and January 8, 1948 did not constitute invalidating orders, that the RFC acted in an arbitrary, capricious and unreasonable manner in the inspection of his books and records, that he had complied with the regulations by preserving all the required records through January 1, 1955 and that his records were complete, accurate and adequate. The Government filed a motion for summary judgment alleging that the defendant's answer did not raise any material issue of fact. The district court concluded that the letter of October 29, 1946 was an order issued under section 2(e) of the Emergency Price Control Act of a definite and final nature, the validity of which could be reviewed only by the Emergency Court of Appeals. Accordingly the Government's motion for summary judgment was

United States v. Schneer's Atlanta, Inc., 1957, 352 U.S. 978, 77 S.Ct. 380, 1 L. Ed.2d 363.

**6.** "October 29, 1946
"Mr. Rex Carpenter
Townville, Pennsylvania
        "Re: Meat Subsidy
"Dear Sir:
    "In accordance with instructions from our Washington Office, this is to advise that all of your DS–T–55 claims through February 1946, have been declared invalid and that a claim receivable in the amount of $34,593.43 has been entered against these claims as per the attached T–C08 adjustment sheets. This is occasioned by the fact that a recent field examination disclosed that your records did not sufficiently support the live weights, cost and dressed weights by grades as reported in these claims.
    "You are given the alternative of either withdrawing these claims by return of the amounts paid thereon, together with interest at 4% per annum, or, supporting them at your own expense by the work of Independent Accountants approved by the Chief Auditor and working under our supervision.
    "You are further advised that all other claims through February, 1946 have been challenged because of insufficient records and that you will be informed

later as to what, if any, corrective action will be necessary to clear those claims.
    "Please let us hear from you immediately regarding your intentions and should you decide to support these claims through the work of an independent accountant, we suggest you contact this Agency regarding the various requirements prior to making any definite arrangements.
                "Very truly yours,
                    "W. R. Clay
                            Examiner"

**7.** "January 8, 1948
"Mr. Rex Carpenter
Townville
Pennsylvania
        "Re: Meat Subsidy
            Claim Receivable $34,593.43
"Dear Mr. Carpenter:
    "Not having heard from you in response to our various requests for settlement of your indebtedness totalling $34,593.43, plus accrued interest, this is to notify you that the case is being forwarded to our Washington office with the recommendation that the same be referred to the Department of Justice.
                "Very truly yours,
                    "W. R. Clay
                            Examiner."

granted and judgment was entered against the defendant in the amount of $34,593.43 with interest. D.C., 147 F. Supp. 768. This appeal followed.

The defendant here seeks reversal of the judgment on the ground that the agency's letter of October 29, 1946 giving the defendant the alternatives of making restitution or verifying his figures by an independent audit did not constitute a final administrative invalidation of his meat subsidy claims. The Government, on the other hand, contends that the letter was a binding determination of the defendant's liability. We agree. The letter advised the defendant that his "DS–T–55 claims through February 1946, have been declared invalid and that a claim receivable in the amount of $34,593.43 has been entered against these claims". By way of explanation the letter stated that "This is occasioned by the fact that a recent field examination disclosed that your records did not sufficiently support the live weights, cost and dressed weights by grades as reported in these claims". We do not agree with the defendant that the letter was deprived of its finality because the defendant was given the alternative of making restitution or verifying his figures by an independent audit. The effect of the latter course was to advise the defendant of the manner in which he could secure further consideration by the agency of the invalidated claims. Its effect was merely to give him an opportunity to seek reconsideration of the order of invalidation. However, unless he took advantage of that opportunity the order of invalidation stood. The letter-order in this case is thus clearly distinguishable from those involved in Riverview Packing Co. v. Reconstruction Finance Corporation, Em.App.1953, 207 F.2d 415, the case upon which the defendant strongly relies.

In the Riverview Packing Co. case the Government relied upon two letters which it regarded as embodying reviewable orders invalidating the slaughterer's subsidy claims. The first letter, an intra-agency communication, merely described the procedure to be followed by the agency in notifying the slaughterer of the alternatives open to it. It was not an order to the slaughterer invalidating his subsidy claims. The slaughterer was notified by the Reconstruction Finance Corporation of the alternate courses open to it, namely, of withdrawing its claims and making restitution or of supporting the claims by an independent audit, and it adopted the second course and retained, with the approval of the agency, an accounting firm to make the audit. 207 F.2d 415, 419. The Emergency Court of Appeals held that the letter thus granting alternative courses, together with the fact that the slaughterer had accepted the second alternative which left something more for the agency to do, namely, to accept or reject the independent audit, prevented the letter from constituting a final order of invalidation. The court found the second letter to be one of advice as to future action with respect to the claims and not a definite and final invalidation. Furthermore a third letter clearly showed that the agency was then still conducting an examination of all of the subsidy claims including those which it alleged had been finally invalidated. Under those circumstances the court determined that no final reviewable order remained for it to consider.

In the present case the defendant did not in the district court contend that he had chosen the alternative of supporting his claims with an independent audit or that the Reconstruction Finance Corporation had conducted any independent examination after the letter of October 29, 1946. On the contrary, in his motion for dismissal of the complaint he alleged that when he visited Mr. Clay after receipt of the letter of October 29th he had denied the violation of any OPA regulation and had affirmed that his records were sufficient and proper. We think that the intent of the agency was clear from its letter of October 29, 1946 and that there was nothing equivocal in the language of that letter advising the de-

fendant that his claims had been "declared invalid" and a claim receivable of $34,593.43 set up against him. The defendant failed to avail himself of the procedure set out in the Emergency Price Control Act for review of the validity of that letter-order and the district court accordingly did not err in finding that the validity of the order was not open for review in these proceedings.

At the bar of this court two other letters were produced by counsel for the defendant. One of these was a letter to the defendant from the agency dated May 21, 1947 [8] and the other a copy of a letter from the defendant to the agency dated May 31, 1947.[9] Counsel have stipulated that these letters, which have just come to light, may be considered as part of the record in this case. We do not think, however, that they help the defendant's cause. While it is true that it appears from them that the defendant was assembling some information which "would enable a satisfactory independent audit to be made" it does not appear that he had chosen that alternative course, with the permission of the agency, as did the slaughterer in the Riverview Packing Co. case. On the contrary, it appears that there was some discussion in respect to repaying the invalidated subsidies since the letter of May 21, 1947 refers to a suggested "plan for repayment of our claim receivable." The final paragraph of that letter disclosing the intention of the agency to refer the matter to the Washington Office for "instructions as to how to proceed" does not detract from the finality of the letter of October 29, 1946. The letter of the defendant of May 31, 1947 adds nothing which aids his position since it merely asks for further time in which to gather information which it appears was never gathered or submitted to the agency.

The judgment of the district court will be affirmed.

---

8. "May 21, 1947
"Refer: W. R. Clay
"Mr. Rex Carpenter
Townville, Pennsylvania
"Re: Meat Subsidy
"Dear Mr. Carpenter:
"Since you and Mr. Sigler, your bookkeeper, visited this office on February 27, 1947, we have not heard from you relative to the information you could assemble which would enable a satisfactory independent audit to be made.
"To date, we have not received the profit and loss statement which you agreed to forward to us as soon as possible. At the time of your visit, it was suggested to you that you submit some plan for repayment of our claim receivable. You have failed to advise as to how you intended to repay the amount involved.
"This is to advise that unless we hear from you within the next ten days, it is our intention to refer the entire matter to our Washington Office for instructions as to how to proceed.
"Very truly yours,
"W. R. Clay,
Examiner."

9. "May 31, 1947
"Reconstruction Finance Corporation
Federal Reserve Bank Building
Cleveland 1, Ohio
"Attn: Mr. W. R. Clay
"Dear Sir:
"Reference W. R. Clay's letter of May 21, 1947.
"At the present date we are still attempting to gather the information you requested at our last visit to your Office.
"We are making progress on this data although it has turned out to be a very slow and tedious job and will take considerably more time than we at first expected.
"We hope you will find it possible to grant us an extension of time on this matter.
"Very truly yours,
"Rex Carpenter"