LAND O'LAKES CREAMERIES, INC.,
Appellant,

v.

COMMODITY CREDIT CORPORATION,
Appellee.

COMMODITY CREDIT CORPORATION,
Appellant,

v.

LAND O'LAKES CREAMERIES, INC.,
Appellee.

Nos. 16129, 16130.

United States Court of Appeals
Eighth Circuit.

April 8, 1959.

**164**

M. J. Doherty, St. Paul, Minn. (W. E. Rumble, Harold Jordan, and Doherty, Rumble & Butler, St. Paul, Minn., on the brief), for Land O'Lakes Creameries, Inc.

Marvin C. Taylor, Special Litigation Counsel, Department of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., and Fallon Kelly, U. S. Atty., St. Paul, Minn., on the brief), for Commodity Credit Corp.

Before GARDNER, Chief Judge, and VOGEL and MATTHES, Circuit Judges.

GARDNER, Chief Judge.

This action was brought by Land O'Lakes Creameries, Inc., a cooperative association incorporated under the laws of Minnesota, engaged in the marketing of butter and cheese on behalf of its members, local farmers cooperatives, and is commonly described as a federated cooperative, against the Commodity Credit Corporation, a federal corporation created by Act of Congress as an agency and instrumentality of the United States within the Department of Agriculture. Land O'Lakes sought a declaratory judgment declaring that certain payments made by the Commodity Credit Corporation paid to it in connection with its program of support of prices of dairy products were valid. The Commodity Credit Corporation denied the validity of these payments and by counterclaim sought to recover $30,624, which sum it alleged had been illegally paid to Land O'Lakes. The action was tried to the court without a jury. The court made elaborate and detailed findings and concluded as a matter of law that the payments made by the Commodity Credit Corporation were not authorized by the Agricultural Act of 1949, 7 U.S.C.A. § 1421 et seq. Pursuant to the findings and conclusions so made the court entered judgment in favor of the Commodity Credit Corporation for the sum of $30,624, but denied the claim of Commodity Credit Corporation for interest prior to judgment, holding that the transactions had been entered into in good faith by all the parties and that it would be inequitable to allow interest prior to judgment. Land O'Lakes Creameries, Inc. has appealed from the judgment and the Commodity Credit Corporation has appealed from that part of the judgment which denied interest prior to the entry of judgment.

The Agricultural Act of 1949, 7 U.S.C.A. § 1421 et seq., so far as here material provides as follows:

"The price of whole milk, butterfat, and the products of such commodities, respectively, shall be supported at such level not in excess of 90 per centum nor less than 75 per centum of the parity price therefor as the Secretary determines necessary in order to assure an adequate supply. Such price support shall be provided through loans on, or purchase of, the products of milk and butterfat." 7 U.S.C.A. § 1446.

By this Act Congress authorized the Secretary of Agriculture to support the market of dairy products either by loans, or by purchases of the products. Confessedly in the instant case there were no loans, and the controlling issue in this case is whether the Commodity Credit Corporation purchased from Land O'Lakes Creameries, Inc. the dairy products described in these proceedings.

The Secretary of Agriculture issued a document known in the record as

Department Announcement 112. This document is in the nature of a purported offer to purchase under conditions enumerated in the document. It provided for a repurchase of the product by the producer and a payment not of the purchase price but of an amount representing the difference of the support price and the price at which he allegedly repurchased the product, which was the loss sustained by the Government in the transaction. The producer made no delivery of the product to the Commodity Credit Corporation, was not required to do so by the contract, and never parted with dominion over his property. In Swift & Company v. United States, 4 Cir., 257 F.2d 787, 794, the issues and facts were indistinguishable from those in the instant case. In pointing out the grounds on which it held there had been no purchase of the dairy products by the Commodity Credit Corporation the court said inter alia:

> "The so-called sales of cheese and butter by the processors were not purchases by CCC in any normal sense of the word. The products never left the possession of the processors or came into the hands of the United States and were never intended to do so. In short, the products never moved and there was no delivery or intention to deliver. Storage, handling and transportation charges connected with the sale or resale were 'for the account of the offerer' (processor), and the offerer assumed all risk of loss. The Government through CCC obtained no right to sell the goods to other parties but was obliged to resell them at a loss to the processor. On the other hand, the processor not only retained physical possession of the products but full power to disregard his contract to sell and repurchase and to dispose of or sell them to anyone he pleased without incurring any liability to the Government. CCC did not pay for the products which it purported to buy and the processors did not pay for the products which they purported to buy back.

Both transactions were settled by one check of the CCC for the loss incurred in the transaction, which it agreed in advance to assume.

"In view of these established facts the reference in paragraph 9 of Da–112, quoted above, to the delivery of butter and cheese and the transfer of title to the products, back and forth, had no actual significance. The transactions were correctly characterized in the testimony of the Chief of the Dairy Division of the Department of Agriculture before the Fountain Committee of Congress. He said that delivery and transfer of title under Da–112 was really just a paper transaction which ended up with the Government owing the cheese manufacturer $2\frac{3}{4}$ cents a pound on all the cheese on which he had submitted claims; that instead of the Government buying the cheese from the manufacturer and the manufacturer then buying it back, what actually happened was that CCC sent the manufacturer a check for the $2\frac{3}{4}$ cents difference."

We conclude that the transactions here involved did not constitute a sale of Land O'Lakes dairy products nor its purchase by the Commodity Credit Corporation.

■ The Agricultural Act of 1949 did not confer upon the Secretary of Agriculture discretion to support prices of dairy products in whatever manner he might think desirable, but specifically provided that the support be effected through the mechanism "of loans on, or purchases of" dairy products.

■ It is contended by Land O'Lakes that the promulgation of Department Announcement 112 was tantamount to an administrative interpretation of the Agricultural Act of 1949 which is entitled to controlling weight. The argument is not convincing. The rule cannot be here invoked because the statute is not ambiguous, nor has the so-called interpretation been continuous nor contemporaneous with the enactment of the statute. In any event, the interpretation must be reasonable, and it can-

not confer rights inconsistent with the express terms of the statute. At best the administrative interpretation is not controlling on the courts. Woods v. Benson Hotel Corp., 8 Cir., 177 F.2d 543.

■■ It remains to consider the contention of the Commodity Credit Corporation that the court erred in refusing to allow interest on the amount of its recovery prior to the date of judgment. The transactions here involved were entered into and carried out in good faith by both the parties concerned. The trial court in declining to allow interest before the date of judgment said:

"The Department of Agriculture concededly acted in good faith in promulgating the program under Da–112. Likewise, plaintiff's transaction with the CCC was entered into in good faith and in the belief that it was legal and proper in all respects. Therefore, it would be inequitable to impose the burden of interest on any recovery herein."

The rule as to allowance of interest is a flexible one, and generally will not be allowed where its imposition would result in an inequity. United States v. Bass, 8 Cir., 215 F.2d 9; Swift & Company v. United States, 4 Cir., 257 F.2d 787; Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 60 S.Ct. 285, 84 L.Ed. 313; Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361. What is said by the United States Court of Appeals for the 4th Circuit in Swift & Company v. United States, supra, is peculiarly apposite in this case because, as heretofore noted, the issues and facts in that case are almost identical with those in the instant case. In response to the insistence that the Commodity Credit Corporation was entitled to interest prior to the entry of judgment the court said:

"The District Judge denied interest prior to judgment on the sums received by the defendants on the ground that its allowance would be inequitable under all the circumstances of the case. The Government does not dispute the general rule that in suits for the enforcement of quasi contractual obligations arising from payments of money by mistake, interest is not allowed as a matter of right but depends upon considerations of practical justice and fairness. Board of Com'rs of Jackson County v. United States, 308 U.S. 343, 350, 60 S.Ct 285, 84 L.Ed. 313; Royal Indemnity Co. v. United States, 313 U.S. 289, 296, 61 S.Ct. 995, 85 L.Ed. 1361; United States v. Bass, 8 Cir., 215 F.2d 9. The circumstances of the present controversy fully justify the application of the rule 'which comports best with general notions of equity.' The defendants entered into the transactions which gave rise to the present suits at the invitation of the United States, in the belief on both sides, that the payments were made in accordance with the governing statutes. Although it now appears that the payments were improperly made, it is conceded that one of the results of the transactions was the saving of a considerable outlay of money on the part of the United States. Furthermore, the department of the Government most concerned insisted for more than two years after the payments were made that the defendants were entitled to retain them, and apparently still holds this view notwithstanding the contrary opinion of the representatives of the Government who prosecute these suits. In view of these facts, it would be inequitable to add interest prior to the date when the judgments were rendered."

On this issue we think the rule adopted by the trial court was in conformity with equitable principles.

We have considered other contentions urged by the respective parties but think they are without merit. The judgment appealed from is therefore affirmed.